Thomas M. Christ, OSB No. 834064
tchrist@sussmanshank.com
Tab Wood, OSB No. 115604
twood@sussmanshank.com
Sussman Shank LLP
1000 S.W. Broadway, Suite 1400
Portland, OR  97205-3089
Tele.: (503) 227-1111
Fax.: (503) 248-0130

*Attorneys for Defendant Marion County*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARTIN LYNCH, et al., | Case No. 3:23-cv-01971-IM |
| Plaintiffs, | (Lead case) |
| v. | |
| MULTNOMAH COUNTY, et al., | |
| Defendants. | |
| JEFFREY SAWYER, et al., | Case No. 3:23-cv-01971-IM |
| Plaintiffs, | DEFENDANT MARION COUNTY'S MOTION TO DISMISS |
| v. | |
| MARION COUNTY, et al., | Oral argument requested |
| Defendants. | |

# CONTENTS

I. LR 7-1(a) Certification ........................................................................... 1

II. Motion ..................................................................................................... 1

III. Overview ................................................................................................. 1

IV. Background .............................................................................................. 1

V. Facts ........................................................................................................ 4

VI. Claims ..................................................................................................... 5

VII. Argument ................................................................................................ 7

    A. This Action Is Barred By O.R.S. 312.220 ....................................... 7

    B. This Action Is Barred by *Res Judicata* ........................................... 11

    C. This Action Is Barred by O.R.S. 312.230(1) ................................... 12

    D. Alternative Grounds for Dismissing the State Claim ...................... 13

        1. Defendants are immune from liability ...................................... 14

        2. Plaintiffs did not give the required pre-suit notice .................. 15

        3. Plaintiffs' claim is untimely ..................................................... 16

    E. Another Alternative Ground for Dismissing the State Claim ............. 16

    F. Alternative Grounds for Dismissing the Federal Claim ...................... 20

        1. The federal claim is untimely .................................................... 20

        2. The federal claim is not viable .................................................. 21

VIII. Conclusion ............................................................................................. 25

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

# AUTHORITIES

## Cases

*Bloomfield v. Weakland,*
339 Or. 504 (2005) ........................................................................... 11

*Brinkley v. OHSU,*
94 Or. App. 531 (1988), *rev. den.*, 307 Or. 571 (1989) .................................... 16

*Cereghino v. State ex rel. State Highway Comm'n,*
230 Or. 439 (1962) ........................................................................... 14 n.

*Cruz v. Multnomah Co.,*
279 Or. App. 1 (2016) ........................................................................ 15

*Dept. of Transportation v. Hewett Professional Group,*
321 Or. 118 (1995) ........................................................................... 20

*E. J. T. v. Jefferson County,*
370 Or. 215 (2022) ........................................................................... 13

*Gearin v. Marion County,*
110 Or. 390 (1924) ........................................................................... 14 n.

*Gwynn v. Wilhelm,*
226 Or. 606 (1961) ........................................................................... 11

*Harriman v. Linn Co.,*
2001 Or. 1 (1953) ............................................................................. 2

*Hood River County v. Dabney,*
246 Or. 14 (1967) ............................................................................ 12

*Evergreen Timber Co. v. Hood River County*, 2
46 Or. 11 (1967) ............................................................................. 13

*Hughes v. State of Orego*n,
314 Or. 1 (1992) ............................................................................. 18

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

# CONTENTS (cont.)

## Cases (cont.)

*Knapp v. Josephine Co.*,
   192 Or. 327 (1951) ................................................................. 2 n., 8

*Linn Co. v. Rozell*,
   177 Or. 245 (1945) ....................................................................4, 7-9

*Mossberg v. University of Oregon*,
   240 Or. App. 490 (2011) ............................................................17-18

*Nelson v. City of New York*,
   353 U.S. 103, 77 S.Ct. 195 (1956) .............................................21-25

*Penland v. Redwood Sanitary Sewer Serv. Dist.*,
   146 Or. App. 225 (1997), *rev'd on other grounds*, 327 Or. 1 (1998) .......... 14 n.

*Reman v. Douglas County*,
   No. 6:15-CV-02309-TC, 2016 WL 3951338 (D. Or. Apr. 15, 2016), *report and
   recommendation adopted sub nom.*, *Rudolph v. Douglas County*,
   2016 WL 3946773 (D. Or. July 20, 2016) .................................. 10 n.

*Robertson v. City of Turner*,
   187 Or. App. 702 (2003) .................................................................. 18

*Rogue Valley Mem'l Hosp. v. Salem Ins. Agency, Inc.*,
   265 Or. 603 (1973) .......................................................................... 11

*Smeenk v. Faught*,
   No. 1:17-CV-01466-CL, 2019 WL 333545 (D. Or. Jan. 25, 2019) ................. 20

*State ex rel. English v. Multnomah County*,
   348 Or. 417 (2010) .......................................................................... 11

*State ex rel Schrunk v. Metz*,
   125 Or. App. 405 (1993) .................................................................. 19

*State v. Hitz*,
   307 Or. 183 (1988) ....................................................................... 4 n.

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

# CONTENTS (cont.)

## Cases (cont.)

*Tyler v. Hennepin County,*
    598 U.S. 631, 143 S.Ct. 1369 (2023) ...........................................................22-25

*Urban Renewal Agency of Coos Bay v. Lackey,*
    275 Or. 35 (1976) ........................................................................................ 16

*Vokoun v. City of Lake Oswego,*
    335 Or. 19 (2002) ........................................................................................ 17

*Westwood Homeowners Ass'n, Inc. v. Lane Co.,*
    118 Or. App. 310, *aff'd*, 318 Or. 146, *modif'd on recon*, 318 Or. 327 (1994).... 3

*Willard v. City of Eugene,*
    25 Or. App. 491 (1976) ................................................................................ 17

*Worman v. Columbia County,*
    223 Or. App. 223 (2008) .............................................................................. 17

## Statutes

O.R.S. 12.010 ...................................................................................................... 20

O.R.S. 12.110 ...................................................................................................... 20

O.R.S. 18.150(2) .................................................................................................. 19

O.R.S. 18.252 ...................................................................................................... 19

O.R.S. 18.860 ...................................................................................................... 19

O.R.S. 30.260(8) ........................................................................................... 13, 14 n.

O.R.S. 30.265(2) .................................................................................................. 13

O.R.S. 30.265(6)(f) ..........................................................................................14-15

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

# CONTENTS (cont.)

## Statutes (cont.)

O.R.S. 30.275(1) ................................................................................................... 15

O.R.S. 30.275(2) ................................................................................................... 16

O.R.S. 30.275(7) ................................................................................................... 16

O.R.S. 30.275(9) ................................................................................................... 16

O.R.S. 312.010(1) ................................................................................................... 2

O.R.S. 312.030 ........................................................................................................ 2

O.R.S. 312.040(1) ................................................................................................... 2

O.R.S. 312.040(3) ................................................................................................... 2

O.R.S. 312.050 ........................................................................................................ 2

O.R.S. 312.070 ........................................................................................ 2, 10 n., 24

O.R.S. 312.080 ........................................................................................... 2, 10 n.

O.R.S. 312.100 .................................................................................................. 3, 12

O.R.S. 312.110 .................................................................................................. 3, 24

O.R.S. 312.120(1) ............................................................................................... 3, 4

O.R.S. 312.120(2) .................................................................................................. 3

O.R.S. 312.125 ..................................................................................................... 6 n.

O.R.S. 312.200 ........................................................................................................ 3

O.R.S. 312.210 ..................................................................................................... 4 n.

O.R.S. 312.216 ........................................................................................................ 2

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

# CONTENTS (cont.)

## Statutes (cont.)

O.R.S. 312.220 ...................................................................................................7-11

O.R.S. 312.230(1) .............................................................................................12-13

42 U.S.C. § 1983 .............................................................................................20-21

## Constitutional Provisions

Or. Const. Art. I, § 18 ..................................................................................5, 16-19

U.S. Const. amend. V ........................................................................................ 6, 23

U.S. Const. amend. VIII ..................................................................................... 6, 23

U.S. Const. amend. IV .......................................................................................... 6

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

# I. LR 7-1(a) CERTIFICATION

Defendant's counsel conferred with plaintiffs' counsel regarding this motion, but they were unable to agree on how to resolve it.

# II. MOTION

Defendant moves the court to dismiss plaintiffs' claims on the ground they are precluded, untimely, or unviable, and maybe all three. Co-defendant Clackamas County does not oppose the motion, and in fact is planning to join it. In anticipation of that, this motion sometimes refers defendants (plural) rather than defendant (singular), and requests dismissal of the claims in full, not just against Marion County.

# III. OVERVIEW

Plaintiffs lost real property to judgments in tax-foreclosure proceedings brought by the defendant counties under laws that plaintiffs now claim, in this action, violate the state and federal constitutions. But none of them raised that objection in the earlier proceedings – indeed, none of them appeared in those proceedings. So they are precluded by law from raising that objection now. And even if not precluded, they waited too long to complain. For either reason, their claims should be dismissed. Alternatively, the state claim should be dismissed for non-compliance with laws governing claims against public bodies, and the federal claims because they've already been rejected by the Supreme Court.

# IV. BACKGROUND

Since this is a challenge to Oregon's tax-foreclosure laws, found in O.R.S. chapter 312, it might be helpful to begin by summarizing them.

**Page 1 – Defendant Marion County's Motion to Dismiss**

Every parcel of land is subject to foreclosure for unpaid property taxes after three years of nonpayment. O.R.S. 312.010(1). The foreclosure process occurs annually in each county and begins with preparation of a list of the delinquent parcels within the county's boundaries. O.R.S. 312.030(1). The county then brings one "general proceeding" in circuit court against each of them – against *the parcels*, that is, not their owners, because a foreclosure proceeding is "a proceeding in rem against the property itself." O.R.S. 312.050(2). Even so, the county gives notice to the owners two ways: it publishes the foreclosure list in a newspaper of general circulation, and sends a letter by certified and first-class mail to the owner of each parcel as shown in the county's deed records. O.R.S. 312.040(1). Of course, even without actual notice, each owner is deemed by law to be aware of the foreclosure proceedings "and all steps taken thereunder," O.R.S. 312.040(3), just as each is deemed to be aware of the taxes owed and the delinquency. O.R.S. 312.216. It doesn't matter, then, that a parcel has changed ownership, by sale or inheritance or other means. *See Harriman v. Linn Co.*, 2001 Or. 1 (1953) (tax foreclosure list, when published, is notice of foreclosure proceedings to all persons interested in the land).[1]

As noted, the foreclosure proceedings are *in rem*. But "[a]ny person interested in any real property included in the foreclosure list" – including, of course, the owner of the property, whether the owner of record or not – "may file an answer and defense to the application for [the] judgment" of foreclosure. O.R.S. 312.070. The answer must "specify the particular cause of objection," which the court hears "in a summary manner." O.R.S. 312.080. There is no restriction on the "cause of objection"; any

---

[1] When property changes ownership, the new owners are required to give the county notice of the change, so they will receive the required mailing. Failing to give notice is no defense to foreclosure. *Knapp v. Josephine Co.*, 192 Or. 327, 358 (1951).

**Page 2 – Defendant Marion County's Motion to Dismiss**

objection is permitted, including presumably an objection that foreclosure would somehow be unconstitutional.

If the objection is overruled, or if no objection is raised, the court enters a judgment foreclosing the tax liens, O.R.S. 312.100, and ordering "that the several properties * * * be sold directly to the county for the respective amounts of taxes and interest for which the several properties are liable." O.R.S. 312.100. Meanwhile, "[a]t any time prior to judgment," any property can be removed from the foreclosure proceeding by simple expedient of paying the back-due taxes. O.R.S. 312.110.

Even after the judgment, anyone with an interest in a parcel, including any heir, devisee, or lienholder, can still "redeem" their interest in it, for up to two years, by payment of the taxes owed, plus interest and a penalty. O.R.S. 312.120(1) and (2). If not redeemed within that time, the property is then deeded to the county without any encumbrances, O.R.S. 312.200, and thereafter the county can do with it what it wants, the same as any other property owner. *See Westwood Homeowners Ass'n, Inc. v. Lane Co.*, 118 Or. App. 310, 313, *aff'd*, 318 Or. 146, *modif'd on recon*, 318 Or. 327 (1994) ("Tax foreclosure statutes are intended to allow a government body to recover unpaid taxes and to vest in that body an indefeasible fee title in the taxed property."). That includes selling the property and keeping all of the proceeds. There is no obligation to give any part of them to the former owner whose interest was foreclosed and not redeemed. That includes any proceeds above the amount of the tax owed plus accumulated interest and the cost to the county of maintaining the property prior to sale.

Of course, there might not be any surplus – the proceeds might not exceed those expenses. In that event, the former property owner enjoys a windfall of sorts, because the county has no right to a judgment against the owner for the deficiency. So the owner has, in the end, paid his taxes with property worth less than the taxes, a windfall of sorts.

**Page 3 –  Defendant Marion County's Motion to Dismiss**

These procedures have been in place for more than a century.  They were adopted in 1907, before which there were no tax-related judicial proceedings.  Back then, the foreclosure and sale of tax-delinquent property "was made by a ministerial officer of the county," and "the owner of the property supposedly delinquent was afforded no hearing of any kind." *Linn Co. v. Rozell*, 177 Or. 245, 254 (1945).  "Under those circumstances, tax sales brought prices wholly out of proportion to the value of the property, and tax deeds were everywhere regarded with disfavor." *Ibid.*  The 1907 laws were intended to afford the owner "his day in court," *id.* at 255, assuming he chooses to appear.[2]

## V. FACTS

The complaint describes in paragraphs 8 to 19 how plaintiffs lost their properties to the defendant counties in tax-foreclosure proceedings.  For purposes of this motion only, Marion County accepts those allegations as true, but supplements them with relevant dates, drawn from public records of the proceedings, which are subject to judicial notice and easily accessed through the Oregon eCourt Case Information System.[3]

---

[2] The day in court includes a right of appeal.  A judgment in a foreclosure proceeding is appealable, as is any "final order" in the proceeding, in the same manner as any other judgment or final order.  O.R.S. 312.210.  An owner who believes that the foreclosure proceedings were objectionable for some reason can thus seek relief from a higher tribunal, *id.*, provided, of course, that the objection was preserved for review, which requires, at a minimum, that it be presented to the foreclosure court for its consideration.  *See State v. Hitz*, 307 Or. 183, 188-89 (1988) (explaining that the raising of an issue is essential to preservation).  Appeals in tax foreclosure cases are not exempted from the usual rules of preservation.  Nor, as will be seen, from the usual rules against collateral attack on an unopposed judgment.

[3] The system "contains case information (Register of Actions) for all Oregon circuit courts and the Oregon Tax Court, and is the official O.R.S. 7.020 register for these courts."  *See* https://publicaccess.courts.oregon.gov/PublicAccessLogin/Login.aspx .  Viewers can see the filings in a case, including their contents.

**Page 4 –  Defendant Marion County's Motion to Dismiss**

Plaintiff Sawyer bought commercial property in Marion County 2007, but didn't pay the taxes on it. So the county brought foreclosure proceedings against it and other tax-delinquent properties in 2014. *See Marion County v. Adams*, *et al.*, Marion Co. Cir. Court case no. 14C20085. He did not appear in the proceedings or object to the country's application for a judgment of foreclosure. Nor did he appeal the judgment when it was granted on October 14, 2014, or redeem the property in the two years that followed. Nine years later, on October 11, 2023, the county sold the property and kept all of the proceeds, not sharing any with Sawyer.

Plaintiff Ortiz owned property in Clackamas County on which he did not pay taxes due from 2013 to 2016. So the county included the property in its 2017 foreclosure proceeding. *See Clackamas County v. AT&T Corp., et al.*, Clackamas Co. Circuit Court case no. 17CV37069, Complaint for Tax Foreclosure, 8/29/2017, Ex. A, p. 7. He did not appear in the proceedings or object to the county's application for a judgment of foreclosure. Nor did he appeal the judgment when it was granted on November 8, 2017, or redeem the property in the two years that followed. The county has owned the property since the judgment. It hasn't been sold.

# VI. CLAIMS

Plaintiffs claim the foreclosure laws are unconstitutional to the extent they allowed plaintiffs to be deprived of their interests in the foreclosed properties, including their interest in the potential value of the properties above the unpaid taxes and interest on those amounts – which sum they call the "surplus."[4] That deprivation, they say, was a "taking" without compensation, prohibited by Article I, section 18, of the Oregon

---

[4] "Potential" because there is no telling, at the time of foreclosure, whether the property will have any value above the unpaid taxes when it's sold after the two-year redemption period – and, in practice, often many years after.

**Page 5 – Defendant Marion County's Motion to Dismiss**

Constitution, and the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. They also allege a violation of the "excessive fines" clause of the Eighth Amendment, likewise applied to the states through the Fourteenth Amendment. They seek damages equal to the surplus, plus attorney fees and costs. They also seek certification of a class of similarly-situated property owners, as well as certification of a defendant class consisting of all thirty-six counties.[5]

---

[5] Plaintiffs begin their pleading by accusing the defendant counties of engaging in the "unfair and illegal practice of * * * retaining the entirety of proceeds from the tax foreclosure sale of properties that are greater than the amount of property taxes and associated costs owed," and of "us[ing] use small amounts of unpaid real estate property taxes to seize property." Complaint (ECF 1), ¶ 2. Those accusations are themselves unfair and misleading in several respects. To start with, the foreclosure procedures are not the *counties'* "practice." As explained earlier, those procedures are prescribed by state law; counties are not free to devise new ones. And, under those laws, property is not ever "seized" in the ordinary or legal sense of that term. What happens is a legal proceeding is brought to foreclose the counties' tax lien – a proceeding in which the owner and any other interested parties can appear to protect their "equity" or "surplus," assuming there is, at that time, any to protect, which is not often the case.

Most tax foreclosures, like most other foreclosures, happen because, at that time, the owners are underwater – their property is worth less than what is owed on it, not just in taxes, but often in mortgages and other liabilities. If that were not so, the owners could sell the properties themselves, pay off the tax liability, and pocket the remainder. In any event, after the foreclosure, the owners still have two years to redeem the property by paying the overdue taxes – which most of them would do if, in the interim, the property increases in value, through the ordinary operation of the real estate market, so that it becomes profitable to own it once again notwithstanding the unpaid taxes. If the market doesn't cooperate, if owning the property remains *un*profitable, the owners can just wash their hands of it; the county can't get a "deficiency" judgment for the amount by which the taxes exceed the property value. Meanwhile, the counties, not the owners, have to incur the usual expenses of ownership, such as maintaining the property, protecting it from waste, vandals and trespassers, improving it if needed, and marketing it for sale, along with some non-ordinary expenses, such as providing the required post-judgment notices. *See, e.g.*, O.R.S. 312.125. On top of all that is the unreimbursed cost of continuing to provide the services to the property that led to the taxes in the first place. If, in the end, those expenses exceed the proceeds of the sale, the loss is borne by the counties, not the former owners. In the end, then, the foreclosed owners get to walk away from any loss that might materialize. What they are asking for in this case is the right to return for any *gain* that might materialize – any proceeds above expenses – without having to pay for that option. They want this court to transform their tax delinquency into, in effect, a cost- and risk-free real estate venture. Fair enough; they're not the first litigants to try to get something for nothing. But they shouldn't be so self-righteous about it. Especially plaintiff Sawyer. His former property was the site of a gas station that had leaking underground storage tanks. After the foreclosure, it had to be decontaminated at the state's expense, not his.

**Page 6 – Defendant Marion County's Motion to Dismiss**

# VII. ARGUMENT

This action is a collateral attack on the judgments in the earlier foreclosure proceedings against plaintiffs' properties. As explained above, the judgments foreclosed plaintiffs' interest in the properties, as the foreclosure laws provide. Plaintiffs now claim those laws are unconstitutional to the extent they were not allowed to retain their interest in the value of their property above the taxes owed – actually, their interest in the potential value of the property, at some unspecified future date, after the redemption period and however long it takes for the county to find a buyer. That, of course, is an objection plaintiffs could have raised in the foreclosure proceedings themselves. But they didn't raise it then, and are thus precluded from raising it now, by statute and by common law. And even if the claims are not precluded, they are untimely and unviable.

## A.    This Action Is Barred By O.R.S. 312.220

O.R.S. 312.220 provides that a tax-foreclosure judgment "is conclusive evidence of its regularity and validity," except where the taxes have been paid or the property was not in fact taxable. It further provides that the judgment in a tax-foreclosure proceeding "shall estop all persons raising objections" that could have been raised to the application for the judgment, including any objection to the judgment of foreclosure or subsequent delivery of unencumbered title the county:

> "Any judgment for the sale of real property to the county, on foreclosure for delinquent taxes, is conclusive evidence of its regularity and validity in all collateral proceedings, except where the taxes have been paid or the property was not liable to assessment and taxation. * * * The judgment shall estop all persons raising objections thereto, or to the title based thereon, which existed at or before the date of the judgment and could have been presented as an objection or defense to the application for the judgment."

In *Rozell*, the Oregon Supreme Court explained that "[s]tatutes of [this] kind protect the tax foreclosure decree from collateral attack." 177 Or. at 274. They render

**Page 7 – Defendant Marion County's Motion to Dismiss**

the decree "conclusive as to matters actually or necessarily determined," and "also conclusive as to matters which might have been litigated and decided." *Id.* at 275 (citation and internal quotation marks omitted). After reviewing Washington Supreme Court cases involving that state's laws, of which the Oregon laws are "virtually a duplicate," *id.* at 253, the Oregon court said:

> "Without reviewing the authorities further, we state our conclusion that the statutes previously quoted require the owner of property described in a certificate of delinquency, which is under foreclosure, to present in the tax foreclosure suit any and every defense which he possesses. *Irregularities * * * cannot be withheld from the tax suit for the purpose of employing them as the basis of a later attack upon the tax deed. The decree and judgment entered in the tax foreclosure suit is an adjudication, not only of all defenses which were submitted, but also of all defenses that could have been submitted. * * *"*

*Id.* at 277-78 (emphasis added). To the same effect, see *Knapp v. Josephine Co.*, 192 Or. at 347 (O.R.S. 312.220 "has proven itself to be an effective shield against collateral attacks upon tax decrees entered in tax foreclosure proceedings").

Earlier in the *Rozell* opinion, the court explained that the foreclosure laws allowed any person with an interest in property in a tax-foreclosure proceeding to appear in the proceeding and raise any objection to the relief sought – that is, any objection to the foreclosure of their interests in the property and later delivery of an unencumbered deed to the county:

> "Reverting now to the parcel of property involved in this appeal, it is apparent that the statutes just quoted made provision so that any person who possessed an interest in that property could have submitted for adjudication in the tax foreclosure suit any defense which he believed possessed merit. Every issue presented by the answer in this suit, based upon something which occurred prior to the entry of the decree, could have been voiced in the tax proceeding. Thus, the appellants were not required to wait until the present suit was begun in order to secure an adjudication of their defenses. The institution of the tax foreclosure suit and the publication of its summons called upon the appellants to submit any defense they possessed. The circuit court had adequate power to grant to the property owner any relief which the circumstances demanded. * * *
>
> "* * * * *

**Page 8 – Defendant Marion County's Motion to Dismiss**

> "Had the appellants submitted in the tax foreclosure suit the defenses set forth in their present answer, they would have received an adjudication of them. The court possessed full and complete authority to grant them any appropriate relief. Had they been dissatisfied with the decree entered at the end of the hearing, they could have taken an appeal to this court. The appeal, had one been taken, would have been complete and effective."

177 Or. at 272-73.

The court went on to say that the laws "not only afforded to all persons interested in the property * * *an opportunity to submit their defenses, but demanded that such be done under penalty of being foreclosed of the defense[s] in the event they were withheld." *Id.* at 273. The only objection not lost if not raised in the foreclosure proceeding is an objection to the jurisdiction of the foreclosure court. *Id.* at 264.

Those holdings apply here. The claims that plaintiffs raise in this action are claims they could have raised in the earlier foreclosure proceedings involving their properties. Plaintiffs could have appeared in those proceeding, as O.R.S. 312.070 allows, and alleged then, as they do now, that it would constitute a "taking" to foreclose all of their interests in the property, including their interest in the value of the property above the taxes owed (excepting their two-years-from judgment right of redemption). Plaintiffs could have alleged then, as they do now, that the foreclosure courts should not have rendered judgments that transferred their properties to defendants without a reservation of plaintiffs' right to a share of the proceeds of any future sale to the extent of any surplus (never mind, again, their unexercised right to redeem the properties and save the surplus even as late as two years post-judgment). Plaintiffs could have argued then, as they do now, that the laws which directed the foreclosure courts to grant the judgments about which plaintiffs now complain are somehow in violation of the state and federal constitutions. As *Rozell* explained, the circuit court "had the adequate power to grant [plaintiffs] any relief which the circumstances demanded." 177 Or. at 272. "Any relief" means any relief. If the state and federal constitutions demand some relief *now*, as plaintiffs contend in this action, they demanded the same relief *back then*, in the

**Page 9 –  Defendant Marion County's Motion to Dismiss**

foreclosure proceedings, and the foreclosures courts were empowered back then to grant that relief by the very laws that plaintiffs now claim are somehow deficient. In failing to ask for that relief in the foreclosure proceedings, plaintiffs are barred from asking for it now. That is the plain import of O.R.S. 312.220.[6]

There is no reason to conclude that objections to a foreclosure judgment based on requirements of the state or federal constitutions – which, of course, trump any state law – cannot be raised or remedied in the foreclosure proceedings themselves, but only in a later, collateral proceeding. That is not only inconsistent with the language of the statutes in question and with the usual rules of *res judicata*, it also makes no sense. If, as plaintiffs contend, it's unlawful to foreclose a property owner's interest in the value of the property above taxes, the foreclosure court is not required to ignore that objection – to just go ahead and commit the error anyway, leaving it to be remedied later in a separate proceeding. If the court can grant relief later – and plaintiffs' whole case is based on the premise that it can and it must – then surely it can grant the same relief sooner. If a court can *remedy* an uncompensated taking, it can also *avoid* one.

---

[6] This court has already concluded, albeit in an unpublished opinion, that O.R.S. 312.070 and 312.080 provide a plain, speedy, and efficient remedy for alleged violations of the federal constitution in tax foreclosure proceedings. In *Reman v. Douglas County*, No. 6:15-CV-02309-TC, 2016 WL 3951338 (D. Or. Apr. 15, 2016), *report and recommendation adopted sub nom.*, *Rudolph v. Douglas County*, 2016 WL 3946773 (D. Or. July 20, 2016), a property owner challenged a county's ability to assess taxes on the property, claiming, among other things, sundry violations of the federal constitution. This court dismissed the action based on the Tax Injunction Act, 28 U.S.C. § 1341, which provides that a district court "shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law where a plain, speedy, and efficient remedy may be had in the courts of such state." This court concluded that the plaintiff had such a remedy under O.R.S. 312.070 and 312.080. *Id.* at *2. The court also said:

> "'State courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Moreover, '[m]inimal respect for the state processes . . . precludes any presumption that the state courts will not safeguard federal constitutional rights.' *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, (1982)."

**Page 10 – Defendant Marion County's Motion to Dismiss**

**B.     This Action Is Barred by *Res Judicata***

The result would be the same even without O.R.S. 312.220.  Oregon follows the common-law doctrine of *res judicata*, Latin for "a thing adjudicated," although Oregon now refers to it as "claim preclusion."  *See Drews v. EBI Companies*, 310 Or. 134, 139 (1990) (describing the change in terminology).  The doctrine prohibits parties from relitigating disputes.  Once an action has gone to judgment, the parties are barred from bringing another action upon the same cause.  The bar applies, it's important to note, not only to claims and defenses that were raised in the earlier proceeding, but also to claims and defenses that could have been raised then but weren't.  *Bloomfield v. Weakland*, 339 Or. 504, 510-11 (2005); *see also State ex rel. English v. Multnomah County*, 348 Or. 417, 433 (2010) ("a defendant cannot raise defenses in an action to enforce a judgment that he or she did raise or could have raised in the action in which the judgment was entered").

It doesn't matter whether the prior judgment was erroneous in some respect – say, a violation of some constitutional dictate; the remedy for an error in a judgment is, of course, an appeal of the judgment, not a new action.  The only exception is when the court lacked jurisdiction, rendering the judgment void *ab initio*.  Otherwise, judgments are immune from collateral attack.  As stated in *Rogue Valley Mem'l Hosp. v. Salem Ins. Agency, Inc.*, 265 Or. 603, 611 (1973), "Oregon has held that, as a general rule, if the court has jurisdiction over the parties and the subject matter, the ensuing judgment, even if erroneous is not void and cannot be collaterally attacked until reversed or annulled, no matter how erroneous it may be."  The no-collateral-attacks rule applies even if the judgment was entered by default.  *See Gwynn v. Wilhelm*, 226 Or. 606, 609 (1961).

There is no question that, in the 2014 and 2017 foreclosure proceedings involving plaintiffs' properties, the courts that entered the judgments had jurisdiction to do so.  It follows that *res judicata*, if not O.R.S. 312.220, prevents plaintiffs from attacking those judgments in this new proceeding.

**Page 11 –  Defendant Marion County's Motion to Dismiss**

It's worth emphasizing that this action is indeed an attack on the judgments that foreclosed on plaintiffs' properties, not on defendants' failure, years later, to give them some of the proceeds of the sale of the properties. The judgments are the reason plaintiff didn't share in the proceeds. The judgments divested plaintiffs of all interest in the properties. As provided in ORS 312.100, the judgments ordered the properties "sold" to the counties for the amount of the unpaid taxes – *not* for the unpaid taxes *and* any surplus that existed then (they don't allege that there was any) or might exist at some later date. Thus, upon entry of the judgments, which, again, plaintiffs didn't oppose, defendants owned the properties *in their entirety* and, thereafter, plaintiff didn't own them *even in part*. From then on, plaintiffs had no interest in the properties excepting the statutory right of redemption, which they chose not to exercise. Like any former property owner, plaintiffs had no right, post-judgment, to the proceeds of a sale of their land by the current owners. And, like any current owner of property, defendants had no obligation, post-judgment, to share the proceeds of a sale of their land with the former owners.

## C.       This Action Is Barred by O.R.S. 312.230(1)

Even if plaintiffs could challenge the judgment in the earlier foreclosure proceedings despite O.R.S. 312.220 and *res judicata*, they still had to bring the challenge on time, and they didn't. O.R.S. 312.230(1) provides a two-year time limit for challenging a foreclosure judgment, beginning on the date of the judgment: "Every action, suit or proceeding, commenced for the purpose of determining the validity of a sale of real property on foreclosure for delinquent taxes * * * shall be commenced within two years from the date of the judgment of foreclosure and sale to the county." In *Hood River County v. Dabney*, 246 Or. 14 (1967), the court held that the two-year time limit applies even to jurisdictional objections to the foreclosure proceedings:

**Page 12 –  Defendant Marion County's Motion to Dismiss**

> "Although we could rest our decision solely upon the ground that the defect in the summons was nonjurisdictional and that, therefore the foreclosure decree is free from collateral attack, in the interest of carrying out the clearly indicated legislative purpose to give the 'utmost stability' to tax titles we prefer to rest our decision upon the broader ground that even if the defect in the proceedings is jurisdictional for failure to meet either legislative or constitutional requirement deemed essential to jurisdiction, it was within the purpose and power of the legislature in enacting O.R.S. 312.220 and O.R.S. 312.230 to bar the delinquent owner from attacking the foreclosure decree."

246 Or at 26; *see also Evergreen Timber Co. v. Hood River County*, 246 Or. 11, 13 (1967) (two-year time-limit is constitutional).

The judgments foreclosing the tax liens on plaintiffs' properties occurred in 201 and 2017, more than two years before plaintiffs filed their complaint in this action in 2023. The complaint is thus barred by O.R.S. 312.230(1).[7]

## D.     Alternative Grounds for Dismissing the State Claim

If the court does not dismiss the whole action under O.R.S. 312.220 and 312.230, it should at least dismiss the state-law claim based on the procedural requirements of the Oregon Tort Claims Act, O.R.S. 30.260 to 30.300. The OTCA is a partial waiver of the state's sovereign immunity. It provides a cause of action against a public body for a "tort" committed by it or its employees or agents, O.R.S. 30.265(2), subject to various substantive and procedural restrictions. As used here, "tort" means "the breach of a legal duty * * * other than a duty arising from contract or quasi-contract." O.R.S. 30.260(8). Plaintiffs' state-law claim is a "tort" claim, thus defined, because it is not contract-based. *See E. J. T. v. Jefferson County*, 370 Or. 215, 221 (2022) ("the OTCA waives immunity

---

[7] The situation is no different than a judgment in a quiet-title action which declares that party A owns the property and party B doesn't. If that judgment is erroneous, if B owns the property, or owns it in part, and it if it can be attacked as a separate action, the time for bringing that action runs from the judgment, not from A's sale of the property years later, if there is a sale, or from anything else A does with the property as the judicially-declared owner. From the judgment on, B has been denied the benefits of ownership, including possession and rent. So, from then on, B has been injured.

**Page 13 –  Defendant Marion County's Motion to Dismiss**

for claims in 'tort,' *as the OTCA uses that term*") (emphasis added).[8] But the claim doesn't comply with several OTCA restrictions, including the act's prohibition on claims based on supposedly unconstitutional laws, its pre-suit notice requirement, and its two-year statute of limitation. And, on top of all that, plaintiffs don't have viable state-law claim. For all those reasons, the claim should be dismissed, even if it's not precluded.

### 1.  *Defendants are immune from liability*

As noted, the Tort Claims Act is a partial waiver of sovereign immunity. It preserves immunity for a variety of torts, including non-malicious acts done under authority of a law that turns out to be unconstitutional. O.R.S. 30.265(6) provides in part:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement authorized under O.R.S. 276.598, are immune from liability for:
>
> "* * * *
>
> "(f) Any claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice.

In adopting this provision, "the legislature intended to provide immunity to public actors who act without bad faith or malice under a law's 'apparent authority' – that is, in

---

[8] Sixty years ago, in *Cereghino v. State ex rel. State Highway Comm'n*, 230 Or. 439, 443 (1962), the Oregon Supreme Court said, without explanation, that takings claims "are not tort actions" under the OTCA. But that holding, if it is a holding, is no longer good law, because it predates the 1985 amendment of the OTCA to create the "tort" definition now found in O.R.S. 30.260(8). In *Penland v. Redwood Sanitary Sewer Serv. Dist.*, 146 Or. App. 225, 233, (1997), *rev'd on other grounds*, 327 Or. 1 (1998), the court considered the 1985 legislation and concluded that the new definition "is extremely broad" and that the legislative history "does not include any discussion" that would narrow it. *Id.* at n. 7. For the same reasons, a 100-year-old, pre-OTCA case that distinguishes takings and torts – *Gearin v. Marion County*, 110 Or. 390, 401-02 (1924) – is irrelevant to the issue whether a "taking" claim is subject to the OTCA and, hence, whether the act's procedural requirements apply to such a claim. It is, and they do.

**Page 14 –  Defendant Marion County's Motion to Dismiss**

accordance with a plausible construction of the law – but the law on which the public actors relied is unconstitutional, invalid, or inapplicable." *Cruz v. Multnomah Co.*, 279 Or. App. 1, 12 (2016). To put it another way, "the legislature intended that public actors acting without bad faith or malice could rely on their plausible interpretation of laws without facing liability for failing to investigate, harmonize, or adopt constructions that hedge against possible future invalidation." *Id.* at 14. Or yet another way: "O.R.S. 30.265(6)(f) applies to public actors who, acting without bad faith or malice, rely on their plausible interpretation of laws that turn out to be unconstitutional, invalid, or inapplicable." *Ibid.*

Plaintiffs' state claim falls squarely within this provision. It alleges that the defendants injured plaintiffs by acts committed under authority of laws that, according to plaintiffs, run afoul of the state constitution. There is no dispute, however, that, in following those laws, defendants acted in good faith and without malice. Plaintiffs are complaining about the laws themselves, not how defendants interpreted them. They allege that those laws, interpreted correctly, result in a constitutional violation. Assuming that is true, defendants are immune from liability for the violations, based on O.R.S. 30.265(6)(f). *See Cruz*, 279 Or. App at 15-17 (county is immune under O.R.S. 30.265(6)(f) from liability for detaining plaintiff based on a "plausible" interpretation of federal regulation that plaintiff claim was unconstitutional).

## 2. *Plaintiffs did not give the required pre-suit notice*

With limited exceptions not relevant here, no one can bring a tort action against a public body without having given the body pre-suit notice of the claim within a specified time of the loss or injury. O.R.S. 30.275(1). For loss or injury not involving a wrongful death, the time limit is 180 days, "not including the period, not exceeding 90 days, during

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity." O.R.S. 30.275(2).

Giving the required notice within the time allowed is an essential element of an action under the OTCA, *see* O.R.S. 30.275(7), and, therefore, is something that the plaintiff must prove. And since the pleadings follow the proof, it is also something that the plaintiff must plead. *See Urban Renewal Agency of Coos Bay v. Lackey*, 275 Or. 35, 41 (1976) ("The pleading and proof of notice to satisfy the requirements of O.R.S. 30.275 is a mandatory requirement and a condition precedent to recovery under the Oregon Tort Claims Act."). Failure to allege proper and timely notice is grounds for dismissal. *See Brinkley v. OHSU*, 94 Or. App. 531, 537 (1988), *rev. den.*, 307 Or. 571 (1989).

The complaint in this case does not allege that plaintiffs gave the required pre-suit notice. The court should, on that ground, if no other, dismiss the state-law claim.

### 3.      *Plaintiffs' claim is untimely*

O.R.S. 30.275(9) provides, with exceptions not relevant here, that "an action arising from any act or omission of a public body or an officer, employee or agent of a public body * * * shall be commenced within two years after the alleged loss or injury." Plaintiffs' alleged losses occurred in 2014 and 2017 when judgments were entered in the foreclosure proceedings, conveying plaintiffs' properties to defendants without allowance for their interest in the surplus except through a right of redemption. This action, commenced more than two years later, is untimely under the OTCA.

### E.      **Another Alternative Ground for Dismissing the State Claim**

Article I, section 18, of the Oregon Constitution provides, in part, that "[p]rivate property shall be taken for public use * * * without just compensation[.]" A claim, such as this one, "to recover the value of private property that the government has taken

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

without first filing condemnation proceedings is referred to as an action for 'inverse condemnation.'" *Vokoun v. City of Lake Oswego*, 335 Or. 19, 26 (2002). To prevail in such an action, the plaintiff must show that the government "took private property intending to put that property to public use." *Mossberg v. University of Oregon*, 240 Or. App. 490, 501 (2011); *see also Vokoun*, 335 Or. at 27; *Worman v. Columbia County*, 223 Or. App. 223, 234 (2008); *Willard v. City of Eugene*, 25 Or. App. 491, 494 (1976) (complaint which did not allege that plaintiff's property "was taken for a public use" did not state a cause of action for inverse condemnation). As explained below, plaintiffs can't show that here.

For these purposes, public use is not the same as public benefit. *Mossberg* explains:

> "The notion that 'public use' equates to 'public benefit' in the context of a claim under Article I, section 18, of the Oregon Constitution has been rejected. * * * The term 'public use' in this context 'means a more intimate relationship between the public and an item of property which has been acquired * * * than is denoted by terms such as 'public benefit' and 'public utility'. 'Public use' demands that the public's use and occupation of the property must be direct." * * * A plaintiff asserting an inverse condemnation claim must show that the government took private property intending to put that property to public use."

240 Or. App. at 500-01 (citations omitted).

Plaintiffs do not claim that their properties were taken in foreclosure because defendants wanted to put those properties to some public use – that defendants wanted the properties for a road, or a park, or a bike path, or some other public works. And, in fact, defendants didn't foreclose on the properties for that purpose. They foreclosed on the properties as a means of collecting the taxes levied on them, which defendants refused to pay. Defendants didn't want the land. They wanted the taxes. Foreclosure might have conferred a benefit on defendants – a means for them to recover the taxes, or

**Page 17 – Defendant Marion County's Motion to Dismiss**

some part of them, if the land could be sold later.  But, as noted, a public benefit is not a public use for Article I, section 18, purposes.  *See Mossberg*, 240 Or. App. at 500-01.  Defendants no more "took" plaintiffs' properties within the meaning of Article I, section 18, than a bank "takes" property when it forecloses the mortgage on property for an unpaid loan.

In *Hughes v. State of Orego*n, 314 Or. 1, 34 (1992), the Court explained that "[n]ot every acquisition of a private property interest by the state constitutes a taking under section 18."  On the contrary, the court said, "through the lawful exercise of other powers available to it, *e.g.*, *the taxing power*, the 'police power,' or the power to purchase property, the state may, consistently with constitutional requirements, acquire private property interests in a manner that does not constitute a taking." *Id.* (emphasis added).  And "when the government acquires such an interest through a power other than its taking power, just compensation is not constitutionally required." *Id.*

It's not always easy to see which power is in play.  As the Court of Appeals explained in *Robertson v. City of Turner*, 187 Or. App. 702  (2003), "government action affecting private property exists along a continuum." *Id.* at 706.  "At one end," the court said, "is actual physical appropriation of real or personal property, which obviously is the exercise of the power of eminent domain and triggers the obligation of just compensation." *I*d. at 706-07.  "At the other end of the continuum," the court continued, "is the exercise of government's authority to promote the health and safety of the populace – what is commonly referred to as exercise of the 'police power,' and "[t]hose exercises are not compensable takings of 'private property for public use' under Article I, section 18." *Id.* at 707 (footnote omitted); *see also Eckles v. State of* Oregon, 306 Or. 380, 398 (1988) ("Exercise of the 'police power,' unlike exercise of the 'eminent domain power,' does not require compensation.").

**Page 18 –  Defendant Marion County's Motion to Dismiss**

There is no question where this case lands on that continuum. Foreclosing a landowner's interest in property for refusal to pay taxes on the land is akin to confiscating of the land for noncompliance with other laws enacted for the public good. And it's well settled that such a confiscation is not a "taking" under Article I, section 18. In *State ex rel Schrunk v. Metz*, 125 Or. App. 405 (1993), for example, the City of Portland confiscated two restaurants under the civil forfeiture laws because the owner was allegedly conducting unlawful gambling on the premises. After he was acquitted of criminal charges relating to the activities, he brought a claim against the city for unlawful taking under Article I, section 18, and demanded compensation. The trial court dismissed the claim summarily, and the Court of Appeals affirmed, saying:

> "Because the seizure and ultimate forfeiture of property * * * is not accomplished by virtue of the power of eminent domain, but is instead undertaken in the exercise of the police power, any acquisition of defendants' properties that may have resulted from the court ordered seizure did not constitute a 'taking' of property as contemplated by Article I, section 18. Accordingly, there was no violation of that constitutional provision."

125 Or. App. at 413.

So, too, here. The forfeiture of plaintiffs' property was not an exercise of the state's power of eminent domain, but an exercise of power on the other end of the *Metz* continuum – the police and taxing powers. What happens when a county forecloses on a tax lien is no different, really, than when it tries to collect any other debt. It can sue a property owner for a non-tax debt and obtain a judgment for damages, which creates a lien against the property. *See* ORS 18.150(2)(b). The county can then enforce the judgment by various means, ORS 18.252, including execution, which involves sale of the property by the sheriff and delivery of the proceeds to the county, with limited rights of redemption by the owner. *See* ORS 18.860 *et seq.* No one would ever suggest that the sale of the property to satisfy the reduced-to-judgment debt was somehow a "taking" of private property "for public use" within the meaning of Article I, section 18.

**Page 19 – Defendant Marion County's Motion to Dismiss**

In sum, there was no taking here.  That being so, plaintiffs have no claim for inverse condemnation under the state constitution.  *See Dept. of Transportation v. Hewett Professional Group*, 321 Or. 118, 130-31 (1995) ("taking" is predicate for inverse condemnation claim).

## E.      Alternative Grounds for Dismissing the Federal Claim

Plaintiffs' federal law claim is brought under 42 U.S.C. § 1983.  But, as explained below, that claim is untimely, too.  On top of that, it has no merit, having already been rejected by the Supreme Court

### 1.      *The federal claim is untimely*

"There is no statute of limitations contained within the language of 42 U.S.C. § 1983, but the consensus of the Ninth Circuit is that 'the applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions.'"  *Smeenk v. Faught*, No. 1:17-CV-01466-CL, 2019 WL 333545, at *4 (D. Or. Jan. 25, 2019) (quoting *Carpinteria Valley Farms, Ltd. v. County. of Santa Barbara*, 344 F.3d 822, 828 (9th Cir. 2003)).  In Oregon, the limitation period for a personal injury is two years, *see* O.R.S. 12.110, so that is the period for bringing a section 1983 claim.  *Ibid.*  The clock starts to run when the claim accrues, which happens with the injury, unless undiscovered.  O.R.S. 12.010.

In this case, the alleged injuries occurred in 2014 and 2017, when the judgments were entered against plaintiffs' properties, preventing them from recovering the surplus, if any, after the redemption periods ended and the properties were sold, if they were

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

(plaintiff Ortiz's former property wasn't). Plaintiffs did not bring their section 1983 claim within two years of those judgments, so the claim is time-barred.[9]

## 2. *The federal claim is not viable*

Plaintiffs argue that defendants deprived them of rights under the federal constitution when they brought foreclosure proceedings against plaintiffs' properties, leading, years later, to loss of their alleged surpluses. The Supreme Court rejected the same claim in a similar circumstance a half-century ago.

*Nelson v. City of New York*, 353 U.S. 103, 77 S.Ct. 195 (1956), concerned an improved parcel of land that was assessed at $6,000 but had $65 in unpaid water charges, which created a lien against it. The city brought an *in rem* foreclosure proceeding against the parcel and 294 other similarly-liened properties, and gave notice by posting, by publication, and by mailing, as required by state law. The owners of the parcel "took no action during the 7 weeks allowed for redeeming the property through payment of back charges nor during the 20 additional days allowed for answering the City's complaint." 353 U.S. at 105-06, 77 S.Ct. at 197. In due course, a judgment of foreclosure was entered by default, and the city acquired title to the parcel, which it later sold to a private party for $7,000, "retaining all the proceeds." *Id.* at 106, 77 S.Ct. at 197.

---

[9] The alleged injury here, it's important to note, is not the failure to give plaintiffs some of the proceeds of the post-redemption sale of their properties, but the foreclosure judgments that transferred plaintiffs' interests in the properties to defendants. Thereafter, plaintiffs had no interest in the properties excepting a right of redemption, if they wanted to exercise it, which, it turns out, they didn't. Like any former property owner, plaintiffs had no right, post-judgment, to the proceeds of a sale of their former lands by the current owners. And defendants had no obligation, post-judgment, to share the proceeds of a sale of their land with the former owners. That was the plain and simple effect of the judgments. So the judgments were the "injury," not any post-judgment sale.

**Page 21 – Defendant Marion County's Motion to Dismiss**

The owners then brought an action to recover their surplus from the sale proceeds. They argued that the city's retention of proceeds "so far exceeding in value the amount owed" deprived them of property without due process of law and constituted a taking without just compensation. *Id.* at 109, 77 S.Ct. at 199. The Court, in a unanimous opinion by Chief Justice Warren, rejected that argument. "What the City of New York has done," the Court said, "is to foreclose real property for charges four years delinquent and, *in the absence of timely action to redeem or to recover any surplus*, retain the property or the entire proceeds of its sale." *Id.* at 110, 77 S.Ct. at 199. "We hold," the Court continued, "that nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." *Ibid.*

In support of that ruling, the Court noted that New York, at that time, had an ordinance which provided that "[e]very person having any right, title or interest in or lien upon any parcel * * * may serve a duly verified answer * * * setting forth in detail the nature and amount of his interest or lien *and any defense or objection to the foreclosure*." *Nelson*, 352 U.S. at 110, n 10 (emphasis added). Under that ordinance, the Court explained, a delinquent property owner could appear in the foreclosure proceedings to allege that the property "had a value substantially exceeding the tax due," and "upon proof of this allegation a separate sale should be directed so that the owner might receive the surplus." *Id.* at 110. But, the Court held, the owners "did not take advantage of this provision, so they forfeited their right to the surplus." *Tyler v. Hennepin County*, 598 U.S. 631, 644, 143 S.Ct. 1369, 1379 (2023) (explaining *Nelson*). And that forfeiture, the Court said in *Nelson*, and said again in *Tyler* seventy-five years later, was not unconstitutional. *Id.*

The Court went on to note that the result might seem "harsh" to some. But, it continued, "relief from the hardship imposed by a state statute is the responsibility of the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

state legislature and not of the courts, unless some constitutional guarantee is infringed." *Nelson*, 353 U.S. at 111, 77 S.Ct. at 199. And no such guarantee was infringed, in the Court's view.

*Nelson* is old law, but good law. It hasn't been overturned. And it's right on point. As the Court said, "nothing in the Federal Constitution prevents" a state from foreclosing all of a tax delinquent's interest in the subject property, including the surplus, and thereby keeping all of the proceeds of a later sale, provided the delinquent had an opportunity under law to protect the surplus. That ruling defeats plaintiff's federal claim.

Plaintiff suggests otherwise in paragraph 3 of its complaint, based on the Court's decision last term in *Tyler*. But *Tyler* is distinguishable for the same reasons that that *Tyler* itself distinguished *Nelson*.

*Tyler* involved Minnesota's tax laws, under which a property owner had one year to pay the county's annual tax on the property. If not paid on time, the county obtains a judgment, transferring title to the state. 598 U.S. at 635, 143 S.Ct at 1373. The plaintiff in *Tyler* lost her property in that fashion: she failed to pay taxes on her condo, so the county "seized" the property and eventually sold it, keeping the surplus. She then filed a putative class action against the county, asserting that her property had been taken without just compensation, in violation of the "takings clause" of the Fifth Amendment and the "excessive fines" clause of the Eighth Amendment. 598 U.S. at 635-36, 143 S.Ct. at 1374.

The Court agreed with the plaintiff and, in doing so, rejected the country's argument that *Nelson* supported its position. *Nelson*, the Court said, was distinguishable:

> "New York City's ordinance * * * permitted the owner to recover the surplus *but required that the owner have 'filed a timely answer in [the] foreclosure proceeding, asserting his property had a value substantially exceeding the tax due.* [*Nelson*, 352 U.S., at 110.] Had the owners challenging the ordinance done so, "a separate sale" could have taken place "so that [they] might receive the surplus.' 352 U.S., at 110. *The owners*

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

*did not take advantage of this procedure, so they forfeited their right to the surplus.* Because the New York City ordinance did not 'absolutely preclud[e] an owner from obtaining the surplus proceeds of a judicial sale,' but instead simply defined the process through which the owner could claim the surplus, we found no Takings Clause violation. *Ibid.*

"Unlike in *Nelson*, Minnesota's scheme provides no opportunity for the taxpayer to recover the excess value; once absolute title has transferred to the State, any excess value always remains with the State. * * *"

598 U.S. at 644, 143 S.Ct. at 1379 (emphasis added)

In Oregon, as in New York at the time of *Nelson*, a delinquent taxpayer has opportunities to recover the value of the property above the taxes – in other words, to recover the surplus – before, and even after, the property is transferred to the county by the foreclosure judgment. The taxpayer can pay what is owed at any time during the foreclosure proceedings before entry of judgment, and the property will be "removed from the proceedings" and omitted from the judgment. *See* O.R.S. 312.110. It won't be "sold" to the county for the unpaid taxes, and the county won't be able to sell it later. So the surplus will be retained. Even after the judgment, the taxpayer can, for up to two years, pay the taxes and interest and redeem the property, against protecting the surplus. *See* O.R.S. 312.120. Moreover, the taxpayer can appear in the foreclosure proceeding to argue, as plaintiffs are arguing now, that his right to the surplus must be protected by means other than what the laws just mentioned provide. O.R.S. 312.070. And the court can, in that proceeding, provide "appropriate relief," *Rozell*, 177 Or. at 272-73, which would include the relief plaintiffs are now seeking – the relief that, according to plaintiffs, the federal constitution requires. Those options, apparently unavailable in Minnesota today, but available in Oregon today and New York circa 1956, distinguish this case from *Tyler*, and renders *Nelson*, not *Tyler*, the controlling authority on this takings issue. As in *Nelson*, but not in *Tyler*, this case is about "the absence of

**Page 24 – Defendant Marion County's Motion to Dismiss**

timely action to redeem or to recover[] any surplus" under laws a allowing for recovery. 352 U.S. at 110, 77 S.Ct. at 110.[10]

In sum, plaintiffs have no right under the federal constitution to recover their alleged surpluses *now*, given their failure to exercise that right *before*.

## VIII. CONCLUSION

The court should dismiss plaintiffs' claims.

Respectfully submitted,

*s/ Tom Christ*
Thomas M. Christ
Tab Wood
Sussman Shank LLP

*Counsel for Defendants*

---

[10] The Court in *Tyler* explained that, historically, Minnesota recognized that a homeowner "had an interest in the excess value of her home over the [tax] debt owed. * * * But in 1935, the State purported to extinguish that property interest by enacting a law providing *that an owner forfeits her interest in her home when she falls behind on her property taxes.*" 598 U.S. at 639 (emphasis added). Oregon has no such law. An owner doesn't forfeit her interest in her home when the taxes on it become overdue. It takes a foreclosure judgment to affect her interest in the property. And the property is not even "subject to foreclosure" until three years of delinquency. O.R.S. 312.010. There is no such forfeiture-upon-delinquency provision in Oregon. Here, forfeiture requires a court proceeding and a judicial decision.

**Page 25 – Defendant Marion County's Motion to Dismiss**