**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tele: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page.)*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARTIN LYNCH, as Personal Representative of the ESTATE OF LYNN ARDEN GRAHAM-LYNCH; KYLE QUEAHPAMA, as heir to the ESTATE OF ROBERTA QUEAHPAMA; TWO J'S DEVELOPMENT COMPANY, LLC, c/o SANDRA VAHALA and JOSHUA VAHALA; LUCAS MERICANTANTE, SCOOTER 97 LLC, c/o LUCAS MERICANTANTE; MICHELLE J. SPARKS-SMITH; WALTER JAQUITH and CAROLYN JAQUITH; on behalf of themselves and all others similarly situated, | Case No. 3:23-cv-01502-IM (lead case) |
| | **CORRECTED FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | |
| MULTNOMAH COUNTY, on behalf of itself and all others similarly situated, LANE COUNTY, on behalf of itself and all others similarly situated, YAMHILL COUNTY, on behalf of itself and all others similarly situated, | |
| Defendants. | |

JEFFREY SAWYER, BALTAZAR ORTIZ, CHRISTOPHER FERRETTI, and BRENT DORRELL, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MARION COUNTY, on behalf of itself and all others similarly situated, CLACKAMAS COUNTY, on behalf of itself and all others similarly situated,

Defendants.

Case No. 3:23-cv-01971-IM

**CORRECTED FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

1.      Plaintiffs Martin Lynch, as Personal Representative of the Estate of Lynn Arden Graham-Lynch; Kyle Queahpama, as heir to Estate of Roberta Queahpama; Christopher Ferretti; Brent Dorrell; Baltazar Ortiz; Walter Jaquith; and Carolyn Jaquith, ("Plaintiffs") bring this action individually and on behalf of all others similarly situated ("Plaintiff Class") against Defendants Multnomah County, Lane County, Clackamas County, and Yamhill County, on behalf of themselves ("Defendants") and all others similarly situated ("Defendant Class").

**NATURE OF THE ACTION**

2.      This case seeks to end and remedy the unfair and illegal practice of Oregon Counties retaining the entirety of proceeds from the tax foreclosure sale of properties that are greater than the amount of property taxes and associated costs owed, rather than returning the surplus proceeds to the former property owners.  Oregon Counties use small amounts of unpaid real estate property taxes to seize property, evict the owners, and then either take and keep the

property for the Counties' benefit or sell the property for amounts that exceed the amount of unpaid taxes.

3.     In *Tyler v. Hennepin County*, 598 U.S. 631 (2023), the United States Supreme Court held that counties may not "use the toehold of the tax debt to confiscate more property than was due" and that keeping the surplus proceeds from a tax sale is "a classic taking in which the government directly appropriates private property for its own use." *Id.* at 639. Before the *Tyler* decision, most states did not allow counties and local taxing authorities to keep surplus proceeds from tax foreclosure sales. Oregon, however, was one of the few states that practiced this "classic taking." Today, Oregon counties continue to commit this "classic taking," even after *Tyler* forbade the practice.

4.     The retention and distribution of surplus proceeds in excess of the unpaid taxes violates the U.S. and Oregon Constitutions' prohibition on the taking of private property for public use without just compensation as well as the U.S. Constitution's prohibition on the imposition of excessive fines.

5.     Plaintiffs, on behalf of themselves and all others similarly situated, seek just compensation for the taking of their private property, a declaration that Oregon's tax foreclosure scheme found in ORS Chapter 312 is unconstitutional, an injunction against further violations, reimbursement of expenses and costs of suit and attorneys' fees as allowed by law, prejudgment interest, and such other relief as the Court deems just and proper.

## THE PARTIES

### A. **PLAINTIFFS**[1]

6.      Plaintiff Martin Lynch, as Personal Representative of the Estate of Lynn Arden Graham-Lynch ("Plaintiff Lynch") is a citizen and resident of Oregon.

7.      Plaintiff Lynch's deceased wife, Lynn Graham Arden-Lynch ("Lynn Lynch"), owned and resided at the property 660 32nd Street, Springfield, Oregon, 97478, Taxlot Number 1702312101000 (the "Lynch Property").

8.      Lynn Lynch passed away on October 13, 2013.

9.      Plaintiff Lynch and Lynn Lynch were married at the time of her death.

10.     Lynn Lynch left no will.

---

[1]      The Court's December 27, 2024, Order (ECF No. 121) instructed Plaintiffs' Amended Consolidated Complaint to allege only claims where the right of redemption terminated within six years of the filing of this class-action lawsuit.  Plaintiffs have accordingly omitted allegations of (1) Sandra Vahalla, Joshua Vahalla, and Two J's Development Company; and (2) Lucas Mericantante and Scooter 97 LLC against Lane County and the Defendant Class.  Those claims were included in Plaintiffs' Motion for Leave to File an Amended Complaint.  ECF 108.

The sale date for the Vahalla/Two J's property occurred on or around November 28, 2017, within six years of the filing of this action.  The sale date for the Mericantante/Scooter 97 property occurred in 2018, also within six years of the filing of this action.  Plaintiffs reserve their appellate rights regarding the taking of surplus proceeds accruing after the sale of those properties (for the Vahallas and Two J's Development Company,  the properties with account numbers 1802170 and 1802188, located at or around 48407 and 48401 Roaring Rapids Way, Oakridge, Oregon, 97463; for Lucas Mericantante and Scooter 97 LLC, the property identified in Lane County public records as 0331866 and 17-03-36-32-03100 located at 1436 Main Street Springfield, Oregon 97477).

Likewise, consistently with the Court's order, Plaintiffs have not included allegations for Michelle J. Sparks-Smith ("Plaintiff Smith"), formerly known as Michelle J. Rardin, as set forth in Plaintiffs' Motion for Leave to File an Amended Complaint.  ECF 108.  Plaintiffs reserve their appellate rights regarding the taking of surplus proceeds from the sale of the property located at 5724 SE Flavel Drive, Portland, Oregon 97206, referred to by Multnomah County public records as Property Account Number R1450.  The sale date occurred in 2018, within six years of the filing of this action.

Page 4 – CORRECTED FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

11.    The Circuit Court of the State of Oregon for the County of Lane appointed Martin

Lynch the Personal Representative of the estate of Lynn Lynch on January 23, 2024, in case

number 24PB00498.

12.    The Lynch Property eventually owed approximately $31,660.57 in taxes and

associated fees and penalties.

13.    On September 24, 2018, the tax collector deeded the property to Lane County per

ORS 312.200, which is the date on which "[a]ll rights or redemption . . . shall terminate."

14.    Lane County then sold the Property on or around March 31, 2020, for

approximately $118,500.

15.    The difference between the sale price and the amount of taxes was approximately

$86,840 (the "Lynch Surplus Proceeds").

16.    Any "interest" or "fees" associated with the Lynch Property after Lane County

became the owner, and after all rights of redemption terminated for Plaintiff Lynch, belong to the

Property owner at that time, which was Lane County, and may not be deducted from the Lynch

Surplus Proceeds.

17.    Lane County retained all proceeds from the sale, including the approximately

$86,840 in surplus proceeds owed to the estate of Lynn Lynch, rather than return those proceeds

to the estate.

18.    Lane County offered no process for the estate of Lynn Lynch to recover any of

the Lynch Surplus Proceeds, or the interest that has accumulated on those proceeds since

September 24, 2018.

19.     Martin Lynch currently lives in a campground in Klamath County as a result of Lane County foreclosing on the property and taking all the surplus proceeds and equity owed to the estate of Lynn Lynch.

20.     Plaintiff Kyle Queahpama ("Plaintiff Queahpama") is a citizen and resident of New Mexico.

21.     Plaintiff Queahpama's parents, Roberta and Calvin Queahpama, owned a home at 2650 SE 101st Avenue, Portland, Oregon 97266, Property ID No. R244260 (the "Queahpama Property").

22.     Plaintiff Queahpama's only sibling passed away in 2004.  In 2008, Plaintiff Queahpama's father, Calvin, passed away.  In 2015, Plaintiff Queahpama's mother, Roberta, passed away.  Plaintiff Queahpama is the only surviving heir of Roberta and Calvin.

23.     Calvin and Roberta left no will.

24.     The Confederated Tribes of Warm Springs opened a probate for Roberta Queahpama, probate estate number 2015-PR23, and appointed Valerie Squiemphen as administrator of the decedent's estate.  Valerie Squiemphen is the Public Administrator at the Confederated Tribes of Warm Springs.

25.     Kyle Queahpama was and is the sole surviving heir.

26.     After Roberta passed away, approximately $25,362.56 in property taxes, penalties, and associated fees accumulated on the property.

27.     Multnomah County then conducted an expedited foreclosure and sale of the Queahpama Property.

28.     Multnomah County acquired the property on or around March 17, 2020, and sold the Queahpama Property to Portlandia Construction LLC for $173,300 on October 12, 2020. Portlandia Construction then sold the property for $457,500 in 2022.

29.     The difference between the sale price and the amount of taxes, penalties, and associated fees was approximately $147,937.44 (the "Queahpama Surplus Proceeds").  Any "interest" or "fees" associated with the Queahpama Property after Multnomah County became the owner, and after all rights of redemption terminated for Plaintiff Queahpama, belong to the owner of the Property at that time, which was Multnomah County, and may not be deducted from the Queahpama Surplus Proceeds.

30.     Multnomah County retained all proceeds from the sale, including the Surplus Proceeds owed to Plaintiff Queahpama.

31.     Multnomah County offered no process for Plaintiff Queahpama to recover any of the surplus proceeds from the tax foreclosure sale of the Queahpama Property, which occurred in 2020, or the accumulated interest of the Surplus Proceeds.

32.     Plaintiff Christopher Ferretti ("Plaintiff Ferretti"), for all relevant times, was a citizen and resident of Oregon.

33.     Plaintiff Ferretti owned 39555 Stefenee Court, Sandy, Oregon 97055, which Clackamas County records identify as Property Account No. 01680540 ("Ferretti Property").

34.     Clackamas County filed a complaint for a tax foreclosure on the property due to approximately $4,711.85 in taxes, fees, and interest owed on or around August 29, 2017.  Public records suggest the redemption period ended and Clackamas County recorded the deed on or after November 12, 2019, pursuant to ORS 312.200.

35.     Clackamas County later sold the Ferretti Property for approximately $38,000.00.

36.    Rather than return the approximately $33,288.15 difference between the amount of taxes and related fees that Plaintiff Ferretti owed and the amount for which Clackamas County sold the property ("Ferretti Surplus Proceeds"), Clackamas County retained all of the Ferretti Surplus Proceeds.

37.    Any "interest" or "fees" associated with the Ferretti Property after Clackamas County became the owner, and after all rights of redemption terminated for Plaintiff Ferretti, belong to the owner of the Property at that time, which was Clackamas County, and may not be deducted from the Ferretti Surplus Proceeds.

38.    Clackamas County offered no process for Plaintiff Ferretti to receive $33,288.15 in surplus proceeds from the tax foreclosure sale of his former property, or the interest that has accumulated on those proceeds since the date all rights of redemption terminated.

39.    Plaintiff Brent Dorrell ("Plaintiff Dorrell"), for all relevant times, was a citizen and resident of Oregon.

40.    Plaintiff Dorrell was the registered agent, manager, and sole member of Organizer Systems Management, LLC ("Dorrell LLC"), which was an Oregon registered LLC.

41.    Dorrell LLC purchased property listed by Clackamas County records as Property Account No. 00579029 ("Dorrell Property") for $450,000.00 in 2003.

42.    Approximately $1,226.62 in taxes and associated fees were owed on the Dorrell Property when Clackamas County filed a complaint for a foreclosure judgment.

43.    Clackamas County public records state that on December 10, 2020, the property was "Removed from Foreclosure or Warrant" indicating the end of the redemption period.[2]

---

[2]    Clackamas County, *Property Account Summary*, https://ascendweb.clackamas.us/parcelinfo.aspx (last visited Dec. 31, 2024).

44.     Clackamas County has retained and kept the full value of the Dorrell Property, above the amount of taxes owed ("Dorrell Surplus Proceeds").

45.     Upon information and belief, the value of the Dorrell Property exceeded the amount of taxes owed when all his rights of redemption terminated.

46.     Upon information and belief, the value of the Dorrell Property at the time he filed his claims exceeded the amount of taxes owed when all his rights of redemption terminated.

47.     Clackamas County records indicate that the County considers the value of the property to exceed $1,226.62.

48.     Any "interest" or "fees" associated with the Dorrell Property after Clackamas County became the owner, and after all rights of redemption terminated for Plaintiff Dorrell, belong to the owner of the Property at that time, which was Clackamas County, and may not be deducted from the Dorrell Surplus Proceeds.

49.     Clackamas County never compensated Plaintiff Dorrell for the taking and retention of the Dorrell Property, or for the interest that has accumulated on his property since the date that all rights to redemption terminated on the property pursuant to ORS 312.200.

50.     Clackamas County offered no process for Plaintiff Dorrell to recover the surplus equity, or the interest that has accumulated on that equity, from the taking and retention of the Dorrell Property.

51.     Plaintiff Baltazar Ortiz ("Plaintiff Ortiz") is a citizen and resident of Oregon.

52.     Plaintiff Ortiz purchased the property that Clackamas County records identify as 26E20CC00100, Property No. 00706917, Legal Description: 409 ALDER CREK SUMMER HMS PT LT 6 ("Ortiz Property").

53.     According to Clackamas County records, the redemption period ended in 2019.

54.     Upon information and belief, the value of the Ortiz Property exceeded the amount of taxes owed when all his rights of redemption terminated.

55.     Upon information and belief, the value of the Ortiz Property at the time he filed his claims exceeded the amount of taxes owed when all his rights of redemption terminated.

56.      Clackamas County has not compensated Plaintiff Ortiz for the taking of his surplus equity, or the interest that has accumulated on the surplus equity since the date all rights of redemption terminated, despite Clackamas County's retention and use of the property.

57.     Plaintiffs Walter and Carolyn Jaquith (the "Jaquith Plaintiffs") are citizens and residents of Oregon.

58.     The Jaquith Plaintiffs owned the property located at 954 5th Street, Lafayette, Oregon, 97127, identified in Yamhill County records as Alternate Property No. R4307BA 04500 ("Jaquith Property").

59.     The Jaquith Property accumulated and owed approximately $11,138.28 in taxes and associated fees and penalties.

60.     Yamhill County entered a complaint for a tax foreclosure on the Jaquith Property on or around August 28, 2015.

61.     Public records suggest the rights of redemption ended and the tax deed was recorded on or after February 6, 2018.

62.     After the tax collector deeded it the property, Yamhill County sold the property in 2019 for approximately $19,699.73.  Rather than return the difference between the sale price and taxes owed, which was approximately $8,561.45 (the "Jaquith Surplus Proceeds"), Yamhill County retained all the Surplus Proceeds from the sale.

63.     Yamhill County offered no process for the Jaquith Plaintiffs to recover any of the surplus proceeds from the tax foreclosure sale of their former property or to recover the interest that has accumulated on the property since the date that Jaquiths Plaintiffs' rights of redemption terminated.

64.     Plaintiffs bring this action on their own behalf and on behalf of a Class of all others similarly situated, defined herein below, pursuant to Federal Rule of Civil Procedure 23.

B.     **DEFENDANTS**

65.     Defendant Multnomah County is a political subdivision of the State of Oregon.

66.     Defendant Multnomah County effected a taking of Plaintiff Queahpama's and Plaintiff Class members' properties by unconstitutionally taking, retaining, and/or distributing their surplus proceeds.

67.     Defendant Multnomah County was deeded Plaintiff Queahpama's and Plaintiff Class members' properties when the tax collector deeded the properties to the County two years after the entry of the foreclosure judgment for the respective properties.

68.     Defendant Multnomah County follows a similar process as all other counties in the State of Oregon regarding the retention and distribution of surplus proceeds as described in ORS Chapter 312, including ORS 275.275.

69.     Sometime after May 2023, Multnomah County started a process of transferring or preparing to transfer Plaintiff Queahpama's and Plaintiff Class members' surplus proceeds to the Oregon Department of State Lands, which is the administrative agency of the State Land Board.

70.     Multnomah County attempted to deem the surplus proceeds that it transfers as "forfeited."

71.     Multnomah County offered inadequate notice of these transfers and "forfeitures" of Plaintiff Queahpama's and Plaintiff Class Members' property interests.

72.     On Multnomah County's website, there was a link to a separate "Surplus Funds Claim Form" (the "Claim Form"). The Claim Form stated, for a period of time, that there were 180 days from the date of sale of a property to submit the Claim Form. The Claim Form then stated that "Any Surplus Funds Not Claimed Within 180 Days from the Date of Sale will be forfeited and submitted to the Oregon Department of State Lands." Multnomah County later modified and removed this language from the future Claim Form.

73.     According to the Claim Form, Multnomah County offered no process to recover surplus proceeds for sales that occurred more than 180 days before the County posted the Claim Form embedded in a link on its website.

74.     Multnomah County's Claim Form includes terms and conditions that are contingent on a claimant's submission, such as an Indemnification Agreement.

75.     Multnomah County's review of claimants' surplus proceed submissions, and Multnomah County changing its Claim Form without any court supervision or notice to potential Claimants, is causing disparate, unequal, and/or arbitrary results within Multnomah County and across the State of Oregon for Plaintiff Class members who faced the same harm but are now navigating different potential remedies and administrative challenges.

76.     Defendant Lane County is a political subdivision of the State of Oregon.

77.     Defendant Lane County effected a taking of Plaintiff Lynch's and Plaintiff Class members' properties by unconstitutionally taking, retaining, and/or distributing their surplus proceeds.

78. Defendant Lane County follows a similar process as all other counties in the State of Oregon regarding the retention and distribution of surplus proceeds as described in ORS Chapter 312, including ORS 275.275.

79. Defendant Clackamas County is a political subdivision of the State of Oregon.

80. Defendant Clackamas County effected a Taking of Plaintiff Ferretti's, Plaintiff Ortiz's, Plaintiff Dorrell's, and Plaintiff Class members' properties by unconstitutionally taking, retaining, and/or distributing their surplus proceeds.

81. Defendant Clackamas County follows the same process as all other counties in the State of Oregon regarding the retention and distribution of surplus proceeds that ORS 275.275 requires.

82. Defendant Yamhill County is a political subdivision of the State of Oregon.

83. Defendant Yamhill County effected a taking of the Jaquith Plaintiffs' and Plaintiff Class members' properties by unconstitutionally taking, retaining, and/or distributing their surplus proceeds.

84. Defendant Yamhill County follows a similar process as all other counties in the State of Oregon regarding the retention and distribution of surplus proceeds as described in ORS Chapter 312, including ORS 275.275.

85. Plaintiffs and the Plaintiff Class bring this action against Defendants and all other counties similarly situated, defined herein below, pursuant to Federal Rule of Civil Procedure 23.

**JURISDICTION AND VENUE**

86. Plaintiffs reallege and incorporate herein by reference all preceding paragraphs.

87. This Court has exercised supplemental jurisdiction over Plaintiffs' claims arising under the Oregon Constitution pursuant to 28 U.S.C § 1367.

88.    Venue of this action is properly laid in the District of Oregon because the Defendants are within its geographical jurisdiction and conduct business within the State.

## FACTUAL ALLEGATIONS

89.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

90.    The Oregon Constitution limits the government's power by prohibiting a taking of property in the absence of a "public use" and requiring that if property is taken, "just compensation" must be paid.

91.    Article I, § 18 of the Oregon Constitution provides: "Private property or services taken for public use.  Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered."

92.    ORS Chapter 312 contains Oregon's tax foreclosure laws.

93.    ORS 312.010(1) makes all land subject to foreclosure for delinquent property taxes after three years of nonpayment.  The foreclosure process occurs annually in each county and begins with the preparation of a list of the delinquent parcels within the county's boundaries, as ORS 312.030(1) prescribes.  The county then brings one "general proceeding" against each property pursuant to ORS 312.050(2). ORS 312.040(1) directs all counties to provide notice to the owners by publication of the foreclosure list in a newspaper of general circulation within the county and by certified and first-class mail to the owner of each parcel according to the county deed records.  ORS 312.070 allows any person interested in any real property in the foreclosure list to file an answer and defense to the application for the judgment of foreclosure and the court hears the answer in a summary manner, as ORS 312.080 describes.  If the objection is overruled, or if no objection is raised, the court enters a judgment foreclosing the tax liens, pursuant to ORS

312.100, and ordering "that the several properties be sold directly to the county for the respective amounts of taxes and interest for which the several properties are liable."

94.    After the judgment of foreclosure, not the date the foreclosure complaint is filed, ORS 312.120(1) and (2) direct that for two years after the sale, any person with an interest in a parcel, including any heir, devisee, or lienholder, can "redeem" the interest in the property by paying the taxes owed, plus interest and a penalty.

95.    If not redeemed within the two years after the judgment of foreclosure, the property is deeded to the county without any encumbrances.  ORS 312.200 states that: "The properties not redeemed within the two-year period prescribed by ORS 312.120 (Period during which property held by county) shall be deeded to the county by the tax collector.  All rights of redemption, with respect to the real properties therein described, shall terminate on the execution of the deed to the county.  No return or confirmation of the sale or deed to the county is required or necessary."

96.    The rights of redemption therefore terminate when the tax collector deeds the properties to the county which is at least two years after the court enters a judgment of foreclosure.  The judgment of foreclosure occurs after a county files its foreclosure complaint.

97.    ORS 312.122 reduces the applicable redemption period if a determination is made that the property is subject to waste or abandonment.

98.    After the redemption period runs, Defendants Multnomah, Lane, Clackamas, and Yamhill Counties, as well as all Defendant Class members, transfer, exchange, or keep the property for their own use or sell the foreclosed property and retain all proceeds from the sale.

99.    ORS 275.275 directs Defendants Multnomah, Lane, Clackamas, and Yamhill Counties, and all other Defendant Class member Oregon counties, to retain and distribute the

surplus proceeds in a uniform manner. The proceeds from the sale first reimburse the county general fund for the amount of state taxes owed to the county. Next, the proceeds reimburse the county general fund for any penalties and fees the county incurred in the maintenance of the tax-foreclosed property prior to its sale. The balance of the remaining proceeds is then distributed to an account or fund created in the discretion of the county treasurer, to municipal corporations holding local improvement liens, and to the certified taxing districts within the county.

100.    Officials in each county of the state of Oregon are charged with enforcing or uniformly acting in accordance with ORS Chapter 312 and ORS 275.275.

101.    Defendants Multnomah, Lane, Clackamas, and Yamhill Counties, as well as all other Defendant Class member Oregon counties, retain all the excess equity or value in the property even after the amount of taxes that were owed by the prior have been satisfied.

102.    No adequate mechanism is available for the Plaintiffs or the Plaintiff Class members to recover the excess equity or value of their surplus proceeds.

103.    The County retains and distributes the proceeds years after the foreclosure judgment. This means that while Plaintiffs and Plaintiff Class Members can object to and answer the foreclosure judgment at a foreclosure hearing, Plaintiffs and Plaintiff Class members cannot possibly answer and object to the separate and subsequent matter of the distribution of proceeds at the foreclosure hearing because the sale, retention, and distribution of proceeds has not yet occurred; may not ever occur after the foreclosure hearing if the County keeps, excludes, exchanges, or leases the property; or will occur at an unknown future date for unknown sale and surplus proceed amounts.

104.    In May 2023, the U.S. Supreme Court held that the retention of proceeds from a tax sale above the amount owed from the unpaid property taxes constitutes a "classic taking in

which the government directly appropriates private property for its own use." *Tyler v. Hennepin Cty.*, 598 U.S. 631, 639 (2023).  The Supreme Court explained that State law cannot "sidestep the Takings Clause by disavowing traditional property interests in assets it wishes to appropriate." *Id.* at 638.

105.    Plaintiffs filed this purported class action on October 12, 2023, that tolled all claims for purported class members.

## CLASS ACTION ALLEGATIONS

106.    Plaintiffs reallege and incorporate herein by reference all preceding paragraphs.

107.    Plaintiffs request that this Court enter an order certifying this action as a class action on behalf of a proposed Plaintiff Class and a proposed Defendant Class.

108.    Plaintiffs request that this Court enter an order certifying this action as a class action on behalf of a proposed Plaintiff Class pursuant to Rule 23(a), 23(b)(1)(A), 23(b)(1)(B), 23(b)(2), and 23(b)(3).s

109.    Plaintiffs request certification of the "Plaintiff Class" defined as follows:

All Persons and entities, and their heirs and successors, who had an ownership interest in real property that a Defendant or member of the Defendant Class seized through a foreclosure action to satisfy unpaid real estate taxes and either (1) sold the property for more than the amount necessary to satisfy such taxes or (2) retained the property and the value of the retained property exceeded such taxes, and to whom the County offered inadequate opportunity for the taxpayer to recover the excess value.

Excluded from the Plaintiff Class are Defendants, the presiding Judge and Court staff assigned to this case, the U.S. Department of Treasury, and the U.S. Internal Revenue Service. Plaintiffs reserve the right to modify or amend the class definition, as appropriate, during the course of this litigation.

110.    The Plaintiff Class period runs from a date six years before the filing of this action, October 12, 2017, through the date the Plaintiff Class alleged herein is certified.

111.    The members of the Plaintiff Class are so numerous that their individual joinder is impracticable.  On information and belief, members of the Plaintiff Class number at least in the hundreds.  The precise number of members of the Plaintiff Class and their current addresses are presently unknown to Plaintiffs but may be ascertained from government property and tax records.

112.    Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

(a)    Whether Defendants' taking of Plaintiffs' and the Plaintiff Class members' properties for public use without "compensation first assessed and tendered" violated Art. I, § 18 of the Oregon Constitution;

(b)    Whether ORS 275.275 violates Art. I, § 18, of the Oregon Constitution;

(c)    Whether Defendants should be enjoined from enforcing ORS 275.275;

(d)    Whether Defendants' taking of Plaintiffs' and the Plaintiff Class members' properties for public use was without "compensation first assessed and tendered" in violation Art. I, § 18, of the Oregon Constitution;

113.    Plaintiffs' claims are typical of the claims of the other members of the Plaintiff Class, because, among other reasons, Plaintiffs and all Class members of the Plaintiff Class suffered the same type of injury, namely, each county in Oregon retained all surplus proceeds from the sale of their former properties and refused to return the surplus proceeds.

114.    Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Plaintiff Class members they seek to represent, they have retained counsel competent and experienced in class action litigation, and their counsel will prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the Plaintiff Class members' interests.  A class action under 23(b)(1)(A) is appropriate because prosecuting separate actions against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  A class action under 23(b)(2) is appropriate because the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

115.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other members of the Plaintiff Class individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Defendants, so it would be uneconomical and impracticable for Plaintiff Class members to individually seek redress for the wrongful conduct.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the

benefits of single adjudication, economies of scale, and comprehensive supervision by a single

court.

116.    Plaintiffs also request that this Court enter an order certifying this action as a class

action on behalf of a proposed Defendant Class pursuant to Rule 23(a), 23(b)(1)(A), (B),

23(b)(2), and 23(b)(3).

117.    Plaintiffs request certification of the "Defendant Class" defined as follows:

> All Counties in Oregon that seized property through a foreclosure action to
> satisfy unpaid real estate taxes and (1) sold the property for more than the
> amount necessary to satisfy such taxes or (2) retained the property that was
> worth more than the taxes owed, and did not provide adequate opportunity
> for the taxpayer to recover the excess value of the surplus proceeds or the
> retained property.

Excluded from the Defendant Class are the presiding Judge and Court staff assigned to this case,

the U.S. Department of Treasury, and the U.S. Internal Revenue Service. Plaintiffs reserve the

right to modify or amend the Class Definition, as appropriate, during the course of this litigation.

118.    The Defendant Class period runs from a date six years before the filing of this

action, October 12, 2017, through the date the Defendant Class alleged herein is certified.

119.    The thirty-six members of the Defendant Class act in a uniform manner pursuant

to ORS Chapter 312 and ORS 275.275.  Individual joinder is impracticable compared to

establishing a Defendant Class consisting of the numerous Counties that act in the uniform, and

mandatory, manner.  Prosecuting separate actions by or against the individual Defendant Class

members could establish incompatible standards of conduct.  Class members may be notified of

the pendency of this action by mail, email, text, Internet postings, and/or publication.

120.    Common questions of law and fact exist as to all members of the Defendant Class

and predominate over questions affecting only individual Defendant Class members.  Such

common questions of law or fact include:

(a)    Whether Defendants committed a taking of Plaintiffs' and the Plaintiff Class
members' properties without just compensation in violation of Art. I, § 18, of the
Oregon Constitution; and

(b)    Whether Defendants' taking of Plaintiffs' and the Plaintiff Class members'
properties for public use was without "compensation first assessed and tendered"
in violation Art. I, § 18 of the Oregon Constitution.

121.    Defendants' defenses are typical of the defenses of the other members of the
Defendant Class. Plaintiffs and all Plaintiff Class members suffered the same type of injury,
namely, Defendants and each member of the Defendant Class retained all surplus proceeds from
the sale of the Plaintiffs' and Plaintiff Class members' former properties and distributed the
surplus proceeds pursuant to ORS 275.275.  Defendants and each member of the Defendant
Class acted in a consistent and uniform manner, pursuant to ORS 275.275, that mandates non-
discretionary retention and distribution procedures of surplus proceeds.

122.    Defendants are adequate Defendant Class representatives because their interests
do not conflict with the interests of the Defendant Class Members they seek to represent.  Each
County of the Defendant Class retains and distributes surplus proceeds from property foreclosed
upon within that specific County.  The distribution of the surplus proceeds remains within each
County and does not conflict with the retention and distribution of surplus proceeds within other
counties.  Defendants share the same defenses and enjoy the same benefits gained from the
unconstitutional conduct regarding such retention and distribution of proceeds.

123.    A class action is superior to any other available means for the fair and efficient
adjudication of this controversy, and no unusual difficulties are likely to be encountered in the
management of this class action.

## CLAIM FOR RELIEF

## VIOLATION OF THE TAKINGS CLAUSE, ARTICLE 1, § 18 OF
## THE OREGON CONSTITUTION

### ASSERTED AGAINST ALL DEFENDANTS AND THE DEFENDANT CLASS FOR MONETARY AND INJUNCTIVE RELIEF

124.     Plaintiffs reallege and incorporate herein by reference all preceding paragraphs.

125.     Article I, section 18, of the Oregon Constitution provides that: "Private property or services taken for public use. Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered[.]"

126.     Article I, section 18, requires the government to determine and pay just compensation before taking private property for a public use.

127.     Defendants' and the Defendant Class members' retention of the surplus proceeds and/or the surplus values of retained properties amounts to a taking of private property for public use without just compensation.

128.     Multnomah County, Lane County, Clackamas County, Yamhill County, and the Defendant Class took, retained, and distributed the surplus proceeds and/or the surplus values of retained properties without a valid public use.

129.     Multnomah County, Lane County, Clackamas County, and Yamhill County, and the Defendant Class took, retained, and distributed the surplus proceeds and/or surplus values of retained properties without providing just compensation.

130.     The takings of Plaintiffs and the Plaintiff Class members' property by Multnomah County, Lane County, Clackamas County, Yamhill County, and the Defendant Class without just compensation injured Plaintiffs and the Plaintiff Class, and they are entitled to just compensation and other relief.

131.    Plaintiffs seek an injunction against Defendants and Defendant Class members to prevent the unconstitutional taking of and failure to return their surplus proceeds.

132.    Plaintiffs seek declaratory relief against Defendants and Defendant Class members that the retention of surplus proceeds from retained or sold properties is a violation of Article I, section 18, of the Oregon Constitution.

## DEMAND FOR JURY TRIAL

133.    Plaintiffs demand trial by Jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

(a)    The Court determine this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1), (b)(2) and (b)(3), on behalf of the Plaintiff Class with Plaintiffs being designated as class representatives, and appointing Plaintiffs' counsel as counsel to the Plaintiff Class;

(b)    The Court determine this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1), (b)(2) and (b)(3), on behalf of the Defendant Class with Defendants Multnomah County, Lane County, Clackamas County, and Yamhill County being designated as class representatives;

(c)    The Court issue a preliminary and permanent injunction against all Defendants and Defendant Class members from retaining surplus proceeds from tax foreclosure sales and failing to return those surplus proceeds to Plaintiffs and Plaintiff Class members;

(d)    The Court award Plaintiffs and Plaintiff Class members the value of the surplus proceeds and the surplus values of retained properties kept from them, and award

Plaintiffs and Plaintiff Class members the accumulated interest on the surplus

proceeds and surplus values from the date that the rights to redemption terminated

or the date of the entry of the foreclosure judgment;

(e)    The Court award Plaintiffs and the Plaintiff Class members prejudgment and post-

judgment interest, as the law permits;

(f)    The Court award Plaintiffs and Plaintiff Class members all costs and fees,

including attorneys' fees, as permitted by law and pursuant to 42 U.S.C. § 1988

and ORS 20.085;

(g)    The Court award all other appropriate damages in an amount to be determined at

trial; and

(h)    The Court grant such other legal, declaratory, equitable or further relief as the

Court may deem just and proper.

RESPECTFULLY SUBMITTED this 17th of January, 2025.


/s/ Nadia H. Dahab

**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tele: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com


**Gregory P. Hansel** (admitted pro hac vice)
**Shana Solomon** (admitted pro hac vice)
**Elizabeth F. Quinby** (admitted *pro hac vice*)
**Michael D. Hanify** (admitted *pro hac vice*)
**Kat Mail** (admitted pro hac vice)


PRETI FLAHERTY BELIVEAU
& PACHIOS, CHARTERED, LLP

**Joseph C. Kohn** (admitted pro hac vice)
**William Hoese**
**Zahra R. Dean** (admitted pro hac vice)
**Elias A. Kohn** (admitted pro hac vice)
KOHN SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tele: (215) 238-1700
jkohn@kohnswift.com
zdean@kohnswift.com
whoese@kohnswift.com
E: ekohn@kohnswift.com

**David H. Fink**
**Nathan J. Fink** (admitted pro hac vice*)*
FINK BRESSACK
38500 Woodward Avenue, Suite 350

One City Center
P.O. Box 9546
Portland, ME 04112
Tele: (207)791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com
mhanify@preti.com
kmail@preti.com

Bloomfield Hills, MI 48304
Tele: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

*Counsel for Plaintiffs and the Proposed Class
and Sub-Classes*

PLAINTIFFS DEMAND A TRIAL BY JURY.

/s/ Nadia H. Dahab
**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204