Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
SNELL & WILMER L.L.P.
601 SW Second Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone:    503.624.6800
Facsimile:    503.624.6888
Attorneys for defendants Baker County, Columbia County, Jackson County, Josephine County, Klamath County, and Marion County

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| MARTIN LYNCH, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MULTNOMAH COUNTY, et al.,<br><br>　　　　Defendants. | Case No. 3:23-cv-1502-IM (lead case)<br><br>**GABBERT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)** |
| MATTHEW GABBERT, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>JOSEPHINE COUNTY, OREGON, et al.,<br><br>　　　　Defendants. | Case No. 1:23-cv-01434-IM (trailing case) |
| JEFFREY SAWYER, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MARION COUNTY, et al.,<br><br>　　　　Defendants. | Case No. 3:23-cv-01971-IM (trailing case) |
| JERRY BAKER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BAKER COUNTY,<br><br>　　　　Defendant. | Case No. 2:24-cv-01503-IM (trailing case) |

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT

SNELL & WILMER
601 SW 2ND AVENUE, SUITE 2000
PORTLAND, OREGON 97204-3229
503.624.6800

I.  **INTRODUCTION**

At every step of the foreclosure process, the Counties have had no choice but to follow state law. State law requires the Counties to foreclose on tax liens (Or. Rev. Stat. § 312.050(1)); state law provides that two years after a foreclosure judgment, property owners lose all legal and equitable interest in foreclosed properties if not redeemed (Or. Rev. Stat. § 312.120); and, until the Legislature recently changed the law, the Counties had to distribute proceeds pursuant to ORS 275.275, which did not allow the Counties to return proceeds to the owners of foreclosed properties.

In *Wilkins*, the Ninth Circuit held that a municipality acting pursuant to mandatory state law cannot be liable under *Monell*. So too under the Oregon Constitution, where an unconstitutional taking turns on whether the municipality acted pursuant to its own goals and intentions. Here, the Counties simply intended to comply with their statutory obligations. Accordingly, the Counties cannot be liable for a taking under the plaintiffs' federal and state constitutional claims. The Court should dismiss those claims with prejudice.

II.  **ARGUMENT**

    A.    **The § 1983 claim should be dismissed.**

          1.    **Plaintiffs ignore the *Monell* aspect of their *Monell* claim.**

Plaintiffs' response confuses two separate issues: (1) liability and (2) who is liable. Plaintiffs enthusiastically argue that the facts pled constitute an unconstitutional taking under *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631 (2023). But that is of no consequence for present purposes. Defendants' motion to dismiss argues that, unconstitutional taking or not, Plaintiffs third amended complaint ("TAC") does not state a claim <u>against Defendants</u> under *Monell*. The Supreme Court did not consider that issue in *Tyler*, and this Court should not read into *Tyler* a proposition that Court did not address.

Instead, this Court should follow the Ninth Circuit's recent decision in *Wilkins*, which <u>did</u> address a *Monell* claim– and where the Supreme Court recently denied cert. *Wilkins v. Herron*, No. 24-80, 2024 WL 5200177, at *2 (9th Cir. Dec. 23, 2024), *cert. denied*, No. 25-9, 2025 WL

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 1

SNELL & WILMER
601 SW 2ND AVENUE, SUITE 2000
PORTLAND, OREGON 97204-3229
503.624.6800

2824087 (U.S. Oct. 6, 2025). As plaintiffs point out, that unpublished decision is not precedent. But it may be considered for its persuasive value. *See Ellen O. v. Comm'r, Soc. Sec. Admin.*, No. 1:21-CV-01577-YY, 2023 WL 4864439, at *8 (D. Or. July 31, 2023) ("Although the opinion is unpublished and not binding precedent, its reasoning is persuasive."). That is especially appropriate here, where Plaintiffs heavily rely on case law from other circuits entirely. *See Kapua v. United States*, No. 3:24-CV-00357-AN, 2024 WL 4827234, at *5 (D. Or. Nov. 19, 2024) ("[T]his Court considers [an unpublished Ninth Circuit decision] to be instructive and persuasive authority considering its factual similarities to this case and the lack of applicable Ninth Circuit authority.").

### 2. No county policy or custom is alleged to have caused the alleged taking.

Plaintiffs argue that *Monell* applies because the Counties "made a series of voluntary decisions that led to them violating the Fifth Amendment" - *i.e.* initiating foreclosure proceedings and selling the foreclosed property to a private buyer. ECF 120 at 15. That argument baselessly seeks to expand the scope of *Monell* liability all the way down the causal chain. But, under Monell, the question is "whether there is a <u>direct causal link</u> between a municipal policy or custom and the allege constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added). Plaintiffs did not allege that any of the counties' supposedly voluntary decisions violated the Fifth Amendment. Instead, Plaintiffs allege only that the Counties' retention of surplus proceeds violates the Fifth Amendment. TAC, ¶¶ 1, 2, 23, 33, 40, 47, 56, 65, 66. In *Monell* terms, that retention is the direct causal link to the alleged Fifth Amendment violation. Critically, moreover, that retention is not a voluntary decision, it is a requirement of state law. For that reason, *Wilkins* should result in dismissal of Plaintiff's *Monell* claim.[1] *See Wilkins*, No. 24-80, 2024 WL 5200177, at *2 ("Wilkins has failed to allege that his injuries were caused by any conduct of Defendants not required by state law.").

---

[1] That *Monell*-specific reason dooms Plaintiffs' § 1983 claim, but that is not to say Plaintiffs cannot state <u>any</u> claim for relief regarding the surplus proceeds. Other non-*Monell* claims might provide legal avenues for Plaintiffs, such as unjust enrichment. Defendants, of course, do not concede that Plaintiffs could adequately plead or prevail on any other claims.

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 2

Plaintiffs attempt to distinguish *Wilkins* by arguing that, unlike the defendant there, the Counties here "were not 'bound by state law.'" ECF 120 at 22. That contention is incorrect and unsupported. Or. Rev. Stat. § 275.275 required the Counties to take the action about which Plaintiffs complain: distribute surplus proceeds to government entities and not to a former owner. In its motion to dismiss, the Counties provided three case citations that stand for that proposition. ECF 106 at 5. Plaintiffs did not meaningfully engage with those cases. Plaintiffs do point out that, in one of those cases, the Oregon Court of Appeals stated that "the county commits an unconstitutional taking when it retains surplus proceeds" under Or. Rev. Stat. § 275.275. *W. States Land Reliance Tr. v. Linn Cnty.*, 343 Or. App. 280, 290 (2025). But the first two words of that quote ("the county") cannot bear the weight Plaintiffs give them. There, the Oregon Court of Appeals was simply comparing Oregon's statutory scheme to the scheme at issue in *Tyler*. And, like *Tyler*, no *Monell* issues were in front of that court.

Nonetheless, Plaintiffs argue that following state law is no defense to *Monell* liability. They point early and often to *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2008), *as amended* (Jan. 30, 2009), *rev'd and remanded sub nom. Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010). But *Humphries* stands for the unremarkable proposition that counties do not enjoy qualified immunity. Instead, as the Ninth Circuit explained, the relevant issue was whether "the county is subject to liability under *Monell*[.]" So, the Ninth Circuit remanded to determine *Monell* liability. On remand, the District Court echoed the counties' position here: "A municipality cannot be held liable under *Monell* merely for enforcing a state law." *Humphries v. Los Angeles Cnty.*, No. SACV03697JVSMANX, 2012 WL 13014632, at *3 (C.D. Cal. Oct. 17, 2012). In contrast, there, the county "did not merely enforce [state law] or fail to adopt additional safeguards and process, but rather <u>maintained its own policies</u>[.]" *Id.* at *4 (emphasis added).

The other Ninth Circuit decision on which Plaintiffs rely is *Evers v. Custer County*, 745 F.2d 1196, 1201 (9th Cir. 1984). That case is inapposite too. There, the issue was not whether the county could be liable for enforcing a state law; rather, the issue was whether the county's own

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 3

SNELL & WILMER
601 SW 2ND AVENUE, SUITE 2000
PORTLAND, OREGON 97204-3229
503.624.6800

discretionary decisions violated due process. As the Ninth Circuit explained,

> "The issue here, however, is not whether [a state law] could extinguish Evers's rights in the road if its requirements were met. The issue is whether the County may make a determination that [those state law] requirements have been met and enforce its conclusion that the road is public without giving Evers prior notice and an opportunity to present argument and evidence that the road was her private property."

*Evers v. Custer County*, 745 F.2d 1196, 1201 (9th Cir. 1984). Indeed, the Ninth Circuit emphasized that the unconstitutional action at issue was an independent decision of the county:

> "It is difficult to imagine a case in which the act complained of more clearly 'implements or executes a . . . decision officially adopted and promulgated by that body's officers,' *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035, than does this one. The Declaration of Public Road was an official decision of the Commissioners, the County's governing body, and the criminal action was instigated at their direction."

*Id.* at 1203; *see Wilkins*, No. 24-80, 2024 WL 5200177, at *2 ("*Evers* is distinguishable" because "the plaintiff's claimed injury . . . was caused by municipal conduct that was *not* required by state law") (emphasis in original). Here, by contrast, it is the carrying out of foreclosures in the manner required by state law, not the independent decisions of the counties, that plaintiffs allege is unconstitutional. In fact, state law *requires* that the Counties foreclose on tax-delinquent properties. Or. Rev. Stat. § 312.050(1) ("On the day that is three months after the day of delinquency of taxes of the latest year, the tax collector, with the assistance of the district attorney, **shall** institute proceedings to foreclose the liens for all the delinquent taxes against each of the several properties included in the foreclosure list."); *see, e.g. State ex rel. Stewart v. City of Salem*, 241 Or. App. 528, 535 (2011) ("Given the mandatory nature of ORS 227.178—'[t]he application *shall* be deemed complete' (emphasis added)—the city had no discretion but to take final action within the 120–day deadline[.]"). In terms of *Monell* liability, there is a difference between a municipality following a state law that <u>authorizes</u> its action as opposed to a state law that <u>required</u> its action—by requiring foreclosure, and requiring the Counties to distribute the proceeds in a specific way. *Evers* was the former and this case is the latter.

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 4

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Plaintiffs disagree that Or. Rev. Stat. § 312.050(1) mandates foreclosure, arguing that statute's command to foreclose must not be truly mandatory here because Or. Rev. Stat. § 312.020(2) contemplates instances when a "district attorney fails to institute or complete foreclosure proceedings." *See* Or. Rev. Stat. § 312.005 ("As used in this chapter, unless the context requires otherwise, 'district attorney' shall include county counsel[.]"). In which case, the statute provides that the Attorney General steps in to do so. *Id.* Because the statutory scheme contemplates that counties might not always follow the foreclosure command in Or. Rev. Stat. § 312.050, plaintiffs reason that it must not be mandatory. But the text of Or. Rev. Stat. § 312.020(2) defeats that argument. First, it says the Attorney General steps in only where the counties "fail[]" to foreclose. The use of the term "fails" to foreclose, as opposed to something discretionary like *decline* to foreclose, reinforces the mandatory nature of the foreclosure command in Or. Rev. Stat. § 312.050(1). *See* Webster's Third New Int'l Dictionary 814 (unabridged ed 2002) (defining "fail" as "to miss attainment", "to neglect to do something," or "to be deficient or inadequate"). Second, when the Attorney General has to step in to foreclose because the county failed to do so, the statute provides that "[a]ll costs incurred by the Attorney General shall be borne by the county in which the foreclosure proceedings are undertaken." Or. Rev. Stat. § 312.020(2). That again reinforces that Or. Rev. Stat. § 312.050 *requires* the Counties to foreclose on tax-delinquent properties, or else someone will come in and do it for them at the Counties' expense. Plaintiffs' strained reading is dispelled by the statutory text.

Plaintiffs argue that some district court decisions suggest that *Evers* can be read to extend *Monell* liability even to a municipality's enforcement of mandatory state law. But the single decision on which Plaintiffs rely simply declined to rule out that possibility, and acknowledged that discussion as dictum. *See Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 988 n. 56 (C.D. Cal. 2023). That is, Plaintiffs urge this court to follow dictum in a footnote of a district court decision rather than a more recent unpublished decision of the Ninth Circuit that is directly on point. This Court should decline Plaintiff's invitation.

Plaintiffs also point to out-of-circuit decisions finding *Monell* liability. Again, there's no

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 5

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

need to look to those Sixth Circuit and Eleventh Circuit decisions when the Ninth Circuit just recently addressed the same issue. Regardless, those out-of-circuit decisions are inapt; they each concern *Monell* liability in the context of an <u>authorizing</u> state law rather than, like here, a mandatory state law that <u>requires</u> certain local action. *See Freed v. Thomas*, 81 F.4th 655, 661 (6th Cir. 2023) (relying on cases "finding municipal liability where a state statute authorized but did not require a city to take a certain action"); *Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005) (emphasizing that unconstitutional statute merely "authorized" the municipal action); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (emphasizing that state law did not require the municipal action at issue). Instead, because Plaintiff's *Monell* claim falls squarely within the Ninth Circuit's decision in *Wilkins*, the Court should dismiss that claim.

### 3. The sole alleged unconstitutional action is the retention of surplus proceeds.

Plaintiffs offer four ways the Counties supposedly could have avoided the alleged constitutional violation. ECF 120 at 19-21. In doing so, Plaintiffs argue that the counties should be liable because they exercised too much and not enough discretion.

First, Plaintiffs argue that the counties can be liable because they acted with discretion in (1) initiating foreclosure proceedings and (2) selling the foreclosed properties to private buyers. As previously noted, Or. Rev. Stat. § 32.050(1) commands the Counties that they "shall" foreclose on properties with delinquent taxes. But, even if discretionary, Plaintiffs do not allege that either of those actions constitutes an unconstitutional taking. Instead, Plaintiffs allege only that the retention of surplus proceeds violates the Fifth Amendment. TAC, ¶¶ 1, 2, 23, 33, 40, 47, 56, 65, 66.

Second, plaintiffs offer two hypothetical suggestions, which both argue that, despite Or. Rev. Stat. § 275.275, the Counties could have created some sort of independent procedure to repay the surplus value. That is, Plaintiffs suggest that the Counties should have devised a way to circumvent that state law even though they, like the property owners, were unaware that state foreclosure law violated the Federal Constitution. That does not grapple with the dispositive

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 6

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

issue here: whether the Counties can be liable under *Monell* for simply adhering, as they must, to that mandatory state law in the first place.

### B. No sufficient allegations of intent under Or. Const. Art. I, § 18 claim.

Plaintiffs do not dispute that they must allege that a government defendant "intentionally authorized" a taking as a necessary element of an inverse condemnation claim under Article 1, section 18 of the Oregon Constitution. For their part, Plaintiffs argue only that they have adequately alleged such intent. That is because, according to them, intent "is simply a *mens rea* requirement in the most basic sense: the government must intend to interfere with property rather than cause such interference negligently or unknowingly." ECF 120 at 23. In other words, Plaintiffs say that neither *Dunn* nor *Mossberg* (cited by defendants) require, what Plaintiffs describe as, "an independent ambition" to take property for public use. *Id.* But that is precisely what those cases require.

In *Dunn,* the Oregon Supreme Court explained:

> "The power of eminent domain is affirmative in nature. It is a power exercised for a particular purpose—the public's benefit—and intentionally. The idea that the sovereign's power of eminent domain could be exercised through error, accident, or inadvertence, is at odds with the nature of the power itself. Inadvertent and unintended acts give rise to liability, if at all, as ordinary torts, not takings."[2]

*Dunn*, 355 Or at 354. Here, the Counties simply intended to comply with their statutory obligations. As such, the County cannot be liable for inverse condemnation because its intent – or, in other words, its purpose – was not to take property for public use but simply to comply with its statutory obligations. Indeed, when determining the meaning of state law, including whether it is compulsory on municipal agents, courts look not to the intent of the municipality carrying out that law, but, rather, the intent of the legislature that enacted the law. *See Roach v. Jackson Cnty.*, 151 Or. App. 33, 35, 949 P.2d 1227,

---

[2] Counties are "immune from liability for . . . [a]ny claim arising out of an act done or omitted under apparent authority of a law . . . that is unconstitutional[.]"). ORS 30.265(6); *see, e.g., Moeller v. Multnomah County*, 218 Or. 413, 423 (1959) ("[I]f there is not a 'taking' sufficient to sustain a case for 'inverse condemnation' and amounts merely to a claim under tort action, the county is not liable."). This Court has already determined that the Oregon Tort Claims Act does not apply to Plaintiffs' state-law takings claims. Defendants argued otherwise and continue to preserve that argument.

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 7

SNELL & WILMER
601 SW 2ND AVENUE, SUITE 2000
PORTLAND, OREGON 97204-3229
503.624.6800

1228 (1997) ("It is axiomatic that the [County] Board and this court are required to carry out the legislature's intent as expressed by ORS chapter 609.")

Likewise, in *Mossberg*, the Oregon Court of Appeals "conclude[d] that the University's <u>goal</u> of freeing up laboratory space for use by another professor does not constitute a public use sufficient to support an inverse condemnation claim under Article I, section 18, of the Oregon Constitution." *Mossberg v. Univ. of Oregon*, 240 Or. App. 490, 501 (2011) (emphasis added). Plaintiffs did not address that conclusion. For their part, Plaintiffs addressed only an alternative argument that the plaintiff made in that case about the disassembly of the equipment itself. *See id.* ("Plaintiff <u>also argues</u> that the University intended to take his property for public use because 'some pieces of equipment were distributed to other university professors[.]'") (emphasis added).

The Court should conclude that much like under federal law and *Monell*, the Counties cannot be liable under Article 1, section 18, absent a showing that the County has acted pursuant to its own goals and intentions.

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice the Third Amendment Complaint against the Gabbert Defendants.

Dated this 5th day of November, 2025          SNELL & WILMER L.L.P.

/s/ Clifford S. Davidson
Clifford S. Davidson, OSB No. 125378

Attorneys for Baker County, Columbia County, Jackson County, Josephine County, Klamath County, and Marion County

4937-2213-2341

REPLY ISO MOTION TO DISMISS
THIRD AMENDED COMPLAINT – 8

SNELL & WILMER
601 SW 2ND AVENUE, SUITE 2000
PORTLAND, OREGON 97204-3229
503.624.6800